No. 97,696

STATE OF KANSAS, *Appellee*, v. JOSEPH JONES, JR., *Appellant*.

(288 P.3d 140)

Opinion filed November 9, 2012.

*Matthew J. Edge*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Jennifer L. Myers*, assistant district attorney, argued the cause, and *Jerome A. Gorman*, district attorney, and *Paul J. Morrison*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Joseph Jones, Jr., seeks review of the Court of Appeals' decision, *State v. Jones*, No. 97,696, 2008 WL 4291467 (Kan. App. 2008) (unpublished opinion), affirming his convictions for aggravated criminal sodomy, furnishing alcohol to a minor for an illicit purpose, and endangering a child. We granted Jones' petition for review in part to clarify whether a nurse's testimony about hospital laboratory results was testimonial in nature within the meaning of the Confrontation Clause. But the evidence in the record is insufficient to make that determination in Jones' favor, and we find no other reversible error. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL OVERVIEW

Jones was employed as a live-in farmhand at a stable where H.F. and other children volunteered to work in exchange for free horseback rides. On October 16, 2005, Jones called H.F., asking if she could come to work. When she arrived at the stable, the owner and a few other volunteers were there looking at horses. However, after H.F. had completed a few chores, she discovered that she had been left alone with Jones.

When H.F. entered the tack room where Jones resided to get a drink, Jones offered her two glasses of soda that contained alcohol. H.F. said she drank both glasses despite the fact that "[i]t made [her] whole chest burn." Jones also gave her a "joint" and repeatedly pressured her to smoke it with him. Despite her initial protests, H.F. eventually agreed to smoke it "once or twice."

When H.F. began feeling dizzy, she attempted to call her grandmother to come for her, but Jones pushed her to the ground, pinned her wrists, knelt on top of her, and put his penis in her mouth. Although she was unsure why, Jones obeyed her command to get off of her. Once free, H.F. threatened Jones with a fork she retrieved from a nearby table and then called her grandmother to come pick her up, before running out into the street.

When the grandmother arrived, she found H.F. staggering down the middle of the road with Jones trailing behind her. In the car, the grandmother noticed that H.F. was acting upset, hysterical, and drugged. Upon arriving at grandmother's house, H.F. vomited several times and then told her grandmother that Jones had touched her.

After learning what had happened, H.F.'s mother took her to the hospital where nurse Gannon, a sexual assault nurse examiner (SANE), conducted an examination. Nurse Gannon collected two sets of physical samples: (1) oral swabs and blood samples for the Kansas Sexual Assault Evidence Collection Kit provided by the Kansas Bureau of Investigation (KBI), and (2) blood and urine samples pursuant to the doctor's orders to test H.F.'s "basic chemistries to see if she was generally healthy." The first set of physical samples was given to the local police as part of the assault kit, which was logged into evidence and sent to the KBI forensic laboratory. Those samples were not analyzed for drugs or alcohol. The second set was given to the hospital laboratory for analysis, the results of which included a positive indication of alcohol and marijuana in H.F.'s system.

Jones was charged with three counts: aggravated criminal sodomy, furnishing alcohol to a minor for an illicit purpose, and endangering a child. At trial, Jones made a hearsay objection to nurse Gannon's testimony that the hospital laboratory results indicated that H.F.'s blood and urine contained alcohol and marijuana. Initially, the district court sustained the objection based on the State's failure to lay a proper foundation for the medical records. After the State presented further foundational testimony, the court overruled Jones' objection when the testimony was offered a second time. Pointedly, the written laboratory report was never admitted into evidence; rather, the State only offered Gannon's testimony as to what was stated in the laboratory report.

The jury convicted Jones on all three counts, the court sentenced him to a term of months in prison, and Jones appealed both his convictions and sentences to the Court of Appeals. In that court, he argued that several errors warranted reversal of his convictions: (1) the admission of Gannon's testimony regarding the hospital

laboratory results violated his right to confrontation under the Sixth and Fourteenth Amendments to the United States Constitution, as well as under § 10 of the Kansas Constitution Bill of Rights; (2) he was convicted of child endangerment based on alternative means without jury unanimity; (3) the district court erred in failing to instruct the jury on the lesser included offense of criminal sodomy; and (4) his sentence was enhanced in violation of the Sixth and Fourteenth Amendments based on prior convictions that were not proved to the jury beyond a reasonable doubt.

The Court of Appeals affirmed Jones' convictions and sentences. With respect to the Confrontation Clause issue, the panel noted that the alcohol and marijuana test results were not part of the KBI forensic investigation; rather, they were obtained from the hospital's testing in connection with H.F.'s treatment. The panel observed that there was nothing in the record to suggest that the laboratory technician performing the tests would have known the samples came from a minor or a crime victim, and that if the technician would not have anticipated their use in a criminal prosecution, the results would not be testimonial in nature. We granted review.

### RIGHT OF CONFRONTATION

Jones' complaint involves nurse Gannon's brief testimony based upon the hospital's laboratory report: "There [were] positive results for marijuana and for alcohol both in her drug test." Because the nurse did not perform the testing, Jones made a hearsay objection at trial, contending that the nurse's testimony related an out-of-court declaration by the laboratory technician that was offered for the truth of the matter asserted. The district court ultimately overruled the objection, apparently determining that the State had laid sufficient foundation to establish that the laboratory report was a business record, even though no report or record was ever proffered or admitted into evidence.

Jones does not specifically challenge the district court's ruling on his hearsay objection. Rather, for the first time on appeal, Jones argues that the nurse's hearsay testimony violated his right to confrontation under the Sixth and Fourteenth Amendments to the

United States Constitution, as well as violating § 10 of the Kansas Constitution Bill of Rights. Ordinarily, the failure to specifically base a trial objection on the Confrontation Clause precludes appellate review of that issue. See *State v. McCaslin*, 291 Kan. 697, 708-09, 245 P.3d 1030 (2011) (appellate issue on right of confrontation not preserved with a hearsay objection); *State v. Bryant*, 272 Kan. 1204, 1208, 38 P.3d 661 (2002) (declined to entertain a Confrontation Clause challenge for the first time on appeal). Nevertheless, in the interest of justice, the Court of Appeals applied an exception to the preservation requirement and addressed the merits of Jones' Confrontation Clause claim. The State did not formally seek our review of the panel's employment of a preservation exception, so that issue is not before us.

In the watershed case of *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the Supreme Court clarified and tightened the requirements to admit testimony in violation of the Sixth Amendment's Confrontation Clause. *Crawford* rendered inadmissible at trial those statements to which the Confrontation Clause applies, unless the statement's maker is unavailable and the defendant had a prior opportunity for cross-examination of the maker. *Crawford*, 541 U.S. at 68. But to implicate a defendant's constitutional right of confrontation, the statement being offered must have been testimonial in nature. 541 U.S. at 68; see also *State v. Miller*, 284 Kan. 682, 711-12, 163 P.3d 267 (2007) (citing *State v. Davis*, 283 Kan. 569, 575, 158 P.3d 317 [2007]). At the heart of this appeal is the question of whether the hospital laboratory technician's statement of the testing results was testimonial in nature.

*Standard of Review*

" 'We employ an unlimited standard of review when addressing issues pertaining to the Confrontation Clause of the Sixth Amendment to the United States Constitution.' *State v. Leshay*, 289 Kan. 546, 547, 213 P.3d 1071 (2009); *State v. Ransom*, 288 Kan. 697, 708-09, 207 P.3d 208 (2009) (whether confrontation rights have been violated is a question of law subject to unlimited review)." *State v. Marquis*, 292 Kan. 925, 928, 257 P.3d 775 (2011).

*Analysis*

The *Crawford* Court did not specifically define testimonial statements, opting instead to identify types of statements that could qualify:

"Various formulations of this core class of 'testimonial' statements exist: *'ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially,' . . . 'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions,' [citation omitted]; 'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial' [citation omitted]." 541 U.S. at 51-52.

The Court later refined its *Crawford* analysis in *Melendez-Diaz v. Massachusetts,* 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009), holding that the sworn statements of laboratory analysts made in contemplation of litigation were testimonial and, thus, subject to *Crawford's* confrontation requirements. See also *State v. Laturner,* 289 Kan. 727, 733-34, 750-51, 218 P.3d 23 (2009) (relying on *Melendez-Diaz* in finding a Kansas statute unconstitutional where it authorized the admission of a sworn forensic lab report in lieu of the preparer's in-court testimony). Most recently, in *Bullcoming v. New Mexico,* 564 U.S. 647, 131 S. Ct. 2705, 2717, 180 L. Ed. 2d 610 (2011), the Court determined that a forensic laboratory report certifying the defendant's blood-alcohol concentration was testimonial. The Court found it significant that while the analyst who prepared the report may not have had to exercise any independent judgment in creating it, the certification he signed included more than the "raw, machine-produced data" regarding Bullcoming's blood-alcohol level, such as his adherence to specific protocols and information regarding chain of custody. 131 S. Ct. at 2714. It was those additions which placed the analyst's certification squarely within confrontation requirements. 131 S. Ct. at 2714 ("These representations, relating to past events and human actions . . . , are meet [*sic*] for cross-examination.").

At the time we granted review in this case, our decision in *State v. Brown,* 285 Kan. 261, 291, 173 P.3d 612 (2007), provided the

best guidance for discerning a statement's testimonial nature by providing a list of factors. But recently we reevaluated *Brown* in light of subsequent opinions issued by the United States Supreme Court that have refined the concept of statements made in the context of medical treatment. See *State v. Miller*, 293 Kan. 535, 264 P.3d 461 (2011); *State v. Bennington*, 293 Kan. 503, 264 P.3d 440 (2011).

In *Miller*, we were asked to decide whether the statements made by a 4-year-old victim of sex crimes to a SANE were testimonial. In doing so, we synthesized the United States Supreme Court's holdings in *Michigan v. Bryant*, 562 U.S. 344, 131 S. Ct. 1143, 1156, 179 L. Ed. 2d 93 (2011); *Bullcoming*, 564 U.S. 647; *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009); and *Giles v. California*, 554 U.S. 353, 128 S. Ct. 2678, 171 L. Ed. 2d 488 (2008), and concluded that a more refined approach in analyzing these types of statements was necessary. *Miller*, 293 Kan. at 568-74.

Although we acknowledged that, generally, statements made to medical professionals for treatment purposes and recorded in medical records are not testimonial, we discerned that the ultimate determination of a statement's character rests with the "primary purpose" of the questioning. 293 Kan. at 570. In that regard, whether statements made to a SANE are testimonial is a "highly context-dependent inquiry." *Miller*, 293 Kan. at 574. "Because the focus is on objective facts, 'the relevant inquiry is not the subjective or actual purpose of the individuals involved . . . , but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred.' *Bryant*, 131 S. Ct. at 1156." *Miller*, 293 Kan. at 571. Relying primarily on *Bryant*, *Miller* adopted a nonexclusive list of the most relevant considerations for establishing the testimonial nature of a victim's statement to a SANE. Those factors include "whether the SANE was a State actor or agent, whether there was an ongoing emergency, whether the encounter was formal, and whether the statements and actions of both [the victim] and the SANE reflect a primary purpose focusing on the later prosecution of a crime." *Miller*, 293 Kan. at 575.

Unfortunately, because Jones did not raise the right of confrontation issue at trial, we have no findings relevant to whether the laboratory results were testimonial in nature. Specifically, we have no findings as to the primary purpose of the hospital technician's laboratory report. That absence precludes us from a proper review on this issue.

As the Court of Appeals opined, there is evidence in the record which would support a finding that the laboratory results in question were generated primarily for medical treatment purposes. Nurse Gannon testified that the doctor directed her to withdraw samples to be used for tests other than the KBI kit, and she said that the tests were to check the victim's "basic chemistries to see if she was generally healthy." In contrast, the nurse testified that she was also assisting law enforcement, and Officer Simmons testified that he encouraged the family to take H.F.to the hospital to "get a rape kit and . . . to also check on her medical condition."

In short, H.F.'s hospital visit accomplished dual purposes, and it is unclear at what point the SANE's activities might have transitioned from medical treatment to law enforcement purposes. We do not even have a finding on when H.F.'s mother consented to collecting the samples. See *Miller*, 293 Kan. at 578 (transition of SANE's inquiries from those made for medical treatment purposes to those made by an agent of the State for the use in a later prosecution may be determined by the timing of consent for collection). Moreover, the absence from the record of the written laboratory report is problematic. See *Bullcoming*, 131 S. Ct. at 2717 (whether a blood-alcohol concentration report was testimonial depended on the context in which it was taken and the purpose of the technician in running the report).

Without findings, we are handcuffed. See *State v. Thomas*, 288 Kan. 157, 161, 199 P.3d 1265 (2009) (regardless of whether the record contains sufficient evidence to make factual findings, that is not the role of this court). "Appellate courts do not make factual findings but review those made by district courts." See *Thomas*, 288 Kan. at 161; *In re Adoption of A.A.T.*, 287 Kan. 590, 599, 196 P.3d 1180 (2008) (an appellate court does not reweigh evidence, substitute its evaluation of evidence for district court's, or pass

upon credibility of witnesses). Accordingly, we must affirm the Court of Appeals' determination that the testimony of nurse Gannon was not testimonial in nature.

## ALTERNATIVE MEANS

Next, Jones presents a curious, albeit creative, alternative means argument. He contends that the jury's verdict on the charge of endangering a child was legally inadequate because the State presented evidence of three alternative means for committing the offense, two of which were legally insufficient because they were multiplicitous with the other charges. Specifically, Jones argues that the crime of endangering a child could have been supported by any one of the following acts: (1) placing his penis in H.F.'s mouth while pinning her down; (2) giving her alcohol; and (3) providing and encouraging H.F. to smoke marijuana. But because the first act was the basis for the sodomy charge and the second was the basis for conviction on furnishing alcohol to minors, Jones argues that evidence of those offenses cannot be used to fulfill the super sufficiency requirement of alternative means. The Court of Appeals simply concluded that this was not an alternative means case and we agree.

"When a single offense is alleged that may be committed in more than one way, the court is presented with an alternative means case. [Citation omitted.] When several acts are alleged, any of which could constitute the crime charged, the court is presented with a multiple acts case. [Citation omitted.]" *State v. Bailey*, 292 Kan. 449, 458, 255 P.3d 19 (2011).

To convict Jones of endangering a child under K.S.A. 21-3680, the State had to prove that he "intentionally and unreasonably caus[ed] or permitt[ed] a child under the age of 18 years to be placed in a situation in which the child's life, body or health [might] be injured or endangered." An alternative means analysis looks at the material elements of the crime, rather than the number of possible factual scenarios that might fit into those elements. For instance, a traditional alternative means argument would go something like this: The defendant could have been convicted of one incident of endangering a child by either *causing* the child to be placed in a dangerous situation or by *permitting* the child to be

placed in that circumstance, and there was evidence of only one of the means. But that is not the situation here. Rather, Jones argues that there are three factual scenarios, involving three separate and distinct acts, each of which could have formed the basis for a charge of endangering a child.

In other words, Jones describes multiple acts whereby the State could have filed three counts of endangering a child. In that scenario, the concern is whether the State elected the act upon which it was relying or the trial court gave a unanimity instruction. Inexplicably, the parties argue over whether the State's closing arguments effected an adequate election from among the multiple acts, even though such an election does not save an alternative means case. In short, Jones' alternative means issue does not fit the facts of this case, and his arguments are without merit.

### LESSER INCLUDED OFFENSE INSTRUCTION

Jones next contends that the district court erred in failing to instruct the jury on simple criminal sodomy, even though Jones did not request the instruction or object to its omission. Accordingly, Jones is not permitted to claim error on appeal unless the failure to give the lesser included offense instruction was clearly erroneous. See K.S.A. 22-3414(3).

*Standard of Review*

Before we can find that the omission of a lesser included offense instruction was clearly erroneous, we must find that the instruction was legally and factually appropriate. That determination is made through a de novo review. See *State v. Williams*, 295 Kan. 506, Syl. ¶ 4, 286 P.3d 195 (2012).

*Analysis*

A district court is under no duty to provide a lesser included offense instruction if the jury could not reasonably convict the defendant of that lesser included offense based on the evidence presented. *State v. McCullough*, 293 Kan. 970, 977, 270 P.3d 1142 (2012); see K.S.A. 22-3414(3). An element of simple criminal sodomy is that the victim was at least 14 years old. K.S.A. 21-3505(a)(2). At trial, H.F.'s uncontroverted testimony was that her

date of birth is June 28, 1993, which made her 12 years old at the time of the incident. Accordingly, even if the jury had been given a lesser included offense instruction on simple criminal sodomy, it did not have sufficient evidence from which it could have reasonably convicted Jones of that offense. The omission of the lesser included offense instruction on simple criminal sodomy was not erroneous and, therefore, it was not clearly erroneous.

### APPRENDI CHALLENGE

Finally, Jones argues that use of his prior convictions in his criminal history score to enhance his sentences without requiring the State to prove the convictions to a jury beyond a reasonable doubt is prohibited under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). He acknowledges that *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002), controls this issue, but he includes it to preserve the argument for federal review. Our position has not changed since *Ivory*. See, *e.g.*, *State v. Fewell*, 286 Kan. 370, 394-96, 184 P.3d 903 (2008). Accordingly, we affirm Jones' sentences.

Affirmed.

DAVIS, C.J., not participating.
PAUL E. MILLER, District Judge, assigned.