NOT DESIGNATED FOR PUBLICATION

No. 115,176

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOSEPH C. JONES,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Wyandotte District Court; J. DEXTER BURDETTE, judge. Opinion filed April 21, 2017. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Sheryl L. Lidtke*, chief deputy district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before LEBEN, P.J., PIERRON and BRUNS, JJ.


*Per Curiam*:  Joseph C. Jones appeals the denial of his K.S.A. 60-1507 motion by the district court. In 2006, Jones was convicted for aggravated criminal sodomy with a child, furnishing alcohol to a minor for an illicit purpose, and endangering a child. The Kansas Supreme Court ultimately affirmed his convictions on direct appeal. He subsequently filed a K.S.A. 60-1507 motion seeking a new trial based on an allegation of ineffective assistance of counsel. Specifically, he contends that his trial attorney failed to investigate a potential alibi witness. Because we find that substantial evidence and the law supported the district court's decision, we affirm.

1

In *State v. Jones*, 295 Kan. 1050, 288 P.3d 140 (2012), the Kansas Supreme Court stated the facts in Jones' underlying criminal case as follows:

"Jones was employed as a live-in farmhand at a stable where H.F. and other children volunteered to work in exchange for free horseback rides. On October 16, 2005, Jones called H.F., asking if she could come to work. When she arrived at the stable, the owner and a few other volunteers were there looking at horses. However, after H.F. had completed a few chores, she discovered that she had been left alone with Jones.

"When H.F. entered the tack room where Jones resided to get a drink, Jones offered her two glasses of soda that contained alcohol. H.F. said she drank both glasses despite the fact that '[i]t made [her] whole chest burn.' Jones also gave her a 'joint' and repeatedly pressured her to smoke it with him. Despite her initial protests, H.F. eventually agreed to smoke it 'once or twice.'

"When H.F. began feeling dizzy, she attempted to call her grandmother to come for her, but Jones pushed her to the ground, pinned her wrists, knelt on top of her, and put his penis in her mouth. Although she was unsure why, Jones obeyed her command to get off of her. Once free, H.F. threatened Jones with a fork she retrieved from a nearby table and then called her grandmother to come pick her up, before running out into the street.

"When the grandmother arrived, she found H.F. staggering down the middle of the road with Jones trailing behind her. In the car, the grandmother noticed that H.F. was acting upset, hysterical, and drugged. Upon arriving at grandmother's house, H.F. vomited several times and then told her grandmother that Jones had touched her.

"After learning what had happened, H.F.'s mother took her to the hospital where nurse Gannon, a sexual assault nurse examiner (SANE), conducted an examination. Nurse Gannon collected two sets of physical samples: (1) oral swabs and blood samples for the Kansas Sexual Assault Evidence Collection Kit provided by the Kansas Bureau of Investigation (KBI), and (2) blood and urine samples pursuant to the doctor's orders to test H.F.'s 'basic chemistries to see if she was generally healthy.' The first set of physical

samples was given to the local police as part of the assault kit, which was logged into evidence and sent to the KBI forensic laboratory. Those samples were not analyzed for drugs or alcohol. The second set was given to the hospital laboratory for analysis, the results of which included a positive indication of alcohol and marijuana in H.F.'s system.

"Jones was charged with three counts: aggravated criminal sodomy, furnishing alcohol to a minor for an illicit purpose, and endangering a child. At trial, Jones made a hearsay objection to nurse Gannon's testimony that the hospital laboratory results indicated that H.F.'s blood and urine contained alcohol and marijuana. Initially, the district court sustained the objection based on the State's failure to lay a proper foundation for the medical records. After the State presented further foundational testimony, the court overruled Jones' objection when the testimony was offered a second time. Pointedly, the written laboratory report was never admitted into evidence; rather, the State only offered Gannon's testimony as to what was stated in the laboratory report.

"The jury convicted Jones on all three counts, the court sentenced him to a term of [222 months] in prison, and Jones appealed both his convictions and sentences to the Court of Appeals. In that court, he argued that several errors warranted reversal of his convictions: (1) the admission of Gannon's testimony regarding the hospital laboratory results violated his right to confrontation under the Sixth and Fourteenth Amendments to the United States Constitution, as well as under § 10 of the Kansas Constitution Bill of Rights; (2) he was convicted of child endangerment based on alternative means without jury unanimity; (3) the district court erred in failing to instruct the jury on the lesser included offense of criminal sodomy; and (4) his sentence was enhanced in violation of the Sixth and Fourteenth Amendments based on prior convictions that were not proved to the jury beyond a reasonable doubt.

"The Court of Appeals affirmed Jones' convictions and sentences. With respect to the Confrontation Clause issue, the panel noted that the alcohol and marijuana test results were not part of the KBI forensic investigation; rather, they were obtained from the hospital's testing in connection with H.F.'s treatment. The panel observed that there was nothing in the record to suggest that the laboratory technician performing the tests would have known the samples came from a minor or a crime victim, and that if the technician

3

would not have anticipated their use in a criminal prosecution, the results would not be testimonial in nature. We granted review." *Jones*, 295 Kan. at 1051-53.

The Kansas Supreme Court upheld Jones' convictions on November 9, 2012. *Jones*, 295 Kan. at 1057-60.

On August 26, 2013, Jones filed a K.S.A. 60-1507 motion seeking a new trial. In his motion, Jones alleged that his trial attorney provided ineffective assistance of counsel by failing to investigate and call Melvin Anderson as a potential alibi witness. According to Jones, Anderson would have been able to testify that he was working at a different ranch on the day of the incident involving H.F. Jones also alleged that Anderson came to the courthouse during his trial, but his trial counsel did not call him as a witness. Finally, Jones attached an affidavit purportedly signed by Anderson in support of his motion.

On June 6, 2014, the same district judge who had presided over Jones' jury trial conducted an evidentiary hearing on the K.S.A. 60-1507 motion. At the hearing, both Jones and his trial attorney testified. Anderson was not present and thus did not testify. At the conclusion of the hearing, the district court denied Jones' motion on the record.

Specifically, the district court found:

"Based upon the credible evidence and testimony presented to this Court, not only through live testimony, but through the pleadings from all of the parties involved, I do not find that Mr. Anderson . . . was what we refer to as an alibi witness. I'm pretty sure that there was no alibi notice given prior to the trial. No alibi defense was used by the defendant during the course of his trial. During the motion for new trial, no issue involving alibi witness or lack thereof was presented . . . nor was the same broached during the defendant's direct appeal from his conviction regarding any sort of . . . alibi witness."

4

The district court went on to find:

"[T]he credible evidence supports the State's response and the Court's rulings in this matter throughout. Based upon the evidence presented at trial, the window of time testified to, I suspect that even if Mr. Anderson had been available to testify, [there would] still be no credible testimony regarding the defendant's presence or lack thereof during the alleged commission of the crime . . . . So I suspect the outcome would not have been any different had Mr. Anderson been here and testified as the defendant has described . . . ."

The district court subsequently filed a written order denying the K.S.A. 60-1507 motion, and Jones timely filed this appeal.

ANALYSIS

The sole issue presented on appeal is whether the district court erred in denying Jones' K.S.A. 60-1507 motion. Jones argues that his trial attorney was ineffective for failing to investigate a potential alibi witness. In response, the State argues that substantial competent evidence was presented at an evidentiary hearing to support the district court's denial of the motion.

"Ineffective assistance of counsel claims—whether based on deficient performance or conflict of interest—involve mixed questions of fact and law." *State v. Cheatham*, 296 Kan. 417, 430, 292 P.3d 318 (2013). When an ineffective assistance of counsel claim is brought under K.S.A. 60-1507 and the district court conducts an evidentiary hearing, we must determine whether the district court's factual findings are supported by substantial competent evidence and whether the findings are sufficient to support the district court's conclusions of law. *State v. Adams*, 297 Kan. 665, 669, 304 P.3d 311 (2013). We are not to reweigh the evidence, assess witness credibility, or

5

resolve conflicting evidence. *State v. Betancourt*, 301 Kan. 282, 290, 342 P.3d 916 (2015) (citing *State v. Gibson*, 299 Kan. 207, 215-16, 322 P.3d 389 [2014]).

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence. We must presume that counsel's conduct fell within the broad range of reasonable professional assistance. See *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish that (1) the performance of defense counsel was deficient under the totality of the circumstances, and (2) the defendant was prejudiced by counsel's error. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014). To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Miller v. State*, 298 Kan. 921, 934, 318 P.3d 155 (2014).

If counsel made a strategic decision after making a thorough investigation of the law and facts relevant to the realistically available options, then it is not appropriate for a reviewing court to second-guess such a decision. Furthermore, counsel may make a reasonable decision that makes particular investigations unnecessary. "'In any ineffective assistance of counsel case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *Cheatham*, 296 Kan. at 437 (quoting *Strickland v. Washington*, 466 U.S. 668, 690-91, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]). Decisions on which witnesses to call, what trial motions to make, and all other strategic and tactical decision are the exclusive province of counsel after consultation with the client. See *Bledsoe v. State*, 283 Kan. 81, 92, 150 P.3d 868 (2007).

6

A review of the record on appeal in the present case reveals that substantial competent evidence supports the district court's conclusion that Jones' trial counsel was not ineffective. At the motion hearing, Jones' trial counsel testified that his client told him about "a gentleman who might know something about it." In addition, according to trial counsel at the hearing, Jones advised trial counsel that the witness would testify that Jones was "too busy [on the day of the crime] to have done any of these things." Trial counsel further testified that he did not utilize an alibi defense because Jones had "indicated that he talked to this young girl at the time and that he tried to kind of counsel with her. So it wasn't totally that he didn't have any contact with her."

Trial counsel told the district court that Jones never told him that Anderson could account for all of his time on the day of the crime. Rather, it was the attorney's understanding, based on what he was told by Jones, that the nature of Anderson's testimony would have simply been that Jones had a long assignment that day. Moreover, trial counsel testified that Jones did not provide him with sufficient information to locate Anderson and that he did not contact him prior to trial.

Additionally, Jones' trial counsel identified a number of steps he took in preparing Jones' case for trial, including preparing for and attending numerous pretrial hearings, filing of several pretrial and posttrial motions, requesting a transcript of an interview with H.F., and engaging expert services with regards to that interview. According to trial counsel, Jones never complained about his services throughout the case.

Jones also testified at the evidentiary hearing. He testified that he provided his attorney with multiple names, phone numbers, and addresses of people who could testify on his behalf. According to Jones, he gave trial counsel contact information for Anderson at least 2 weeks before the trial. At the time of the evidentiary hearing on the K.S.A. 60-1507 motion, however, Jones was unable to produce Anderson's contact information. Jones further testified that he told Anderson to expect a subpoena for the trial, but his

7

attorney never sent one to him. Likewise, Jones testified that Anderson had remained at the same address prior to the trial.

Jones then testified that Anderson had asked him to construct new manure traps and to clean the stables on Anderson's ranch. According to Jones, this task was supposed to take the whole day. Jones further testified about the distance between Anderson's ranch and the ranch where he normally worked. Jones' testimony was inconsistent on whether Anderson was actually at the courthouse during the trial. In addition, Jones testified that Anderson was sick at the time of the trial and he may not have been able to testify. Jones agreed on cross-examination that Anderson was not with him throughout the entire day of the crime.

Jones also attached to his K.S.A. 60-1507 motion an affidavit purportedly signed by Anderson. The affidavit does not say that Anderson and Jones were together for the entire day. Rather, it says Jones completed a project that took a few hours at his ranch. Interestingly, Anderson dated the affidavit May 28, 2009, which would have been while Jones' direct appeal was still pending. However, it does not appear that Jones ever mentioned the affidavit in the direct appeal. Moreover, Jones did not call Anderson to testify as a witness at the evidentiary hearing. Accordingly, it is impossible to know what his testimony might have been outside of what is stated in his affidavit.

After hearing the testimony and reviewing the record, the district judge—who had also presided over the trial and posttrial motions' hearings—found that Anderson was not an alibi witness. Accordingly, the district judge also concluded that Jones had failed to establish that his trial counsel was ineffective. While there is conflicting evidence, we find substantial competent evidence supported this conclusion.

There was testimony presented at the evidentiary hearing that Jones' attorney never had sufficient information to contact Anderson. In addition, the testimony at the

hearing—as well as the affidavit—suggest that Anderson could not have testified at trial to Jones' exact location throughout the day of the crime. Likewise, Jones does not indicate how testimony that he was working at a near-by ranch for part of the day would establish that he was not present when H.F. was sexually attacked.

At trial, H.F. testified in detail about the attack. Moreover, H.F.'s grandmother testified about H.F.'s emotional condition after leaving the stables and that she saw a man following her granddaughter when she went to pick her up. Pete Smith, the owner of the stables, testified that he saw Jones working at the stables on the day of the crime. Furthermore, trial counsel testified at the evidentiary hearing that Jones had suggested to him that he had talked to H.F. on the day of the crime and had tried to counsel her. As such, it is reasonable that Jones' attorney would have attempted to defend the case by pointing out inconsistencies in H.F.'s version of the events rather than presenting an alibi defense.

We, therefore, conclude that there is substantial competent evidence to support the district court's factual findings and legal conclusions.

Affirmed.