NOT DESIGNATED FOR PUBLICATION

No. 116,551

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERT CAMPBELL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TERRY L. PULLMAN and JOHN J. KISNER, JR., judges. Opinion filed March 16, 2018. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant, and *Robert L. Campbell*, appellant pro se.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., GREEN, J., and HEBERT, S.J.

PER CURIAM: Robert Campbell appeals from his conviction and sentencing for stalking. He argues the jury lacked sufficient evidence to find him guilty of stalking; his rights to confront his accuser were violated; his substantive due process rights were violated; and the State failed to disclose exculpatory evidence. We find no reversible error and affirm Campbell's conviction and sentence.

1

*Factual and Procedural Background*

In 2013, Campbell was convicted by a jury of stalking for phone calls made to T.D. At trial, T.D. testified against Campbell. Another panel of this court affirmed that conviction. *State v. Campbell*, No. 114,396, 2016 WL 6651311, at *8 (Kan. App. 2016) (unpublished opinion).

On April 29, 2014, T.D. checked her business mail and discovered two letters from the correctional facility in Lansing. The outside of the envelopes indicated the letters were from Robert Campbell. T.D. testified that when she saw the letters she felt "quite nervous" and scared because Campbell was not supposed to contact her. T.D. further testified when she saw the letters she "had a moment of freakout because then [she] felt like [Campbell] was right here again in [her] presence." She contacted the Wichita Police Department and placed the letters in a paper bag. The next day, a Wichita Police Department officer opened the letters with T.D. present. T.D. only read portions of the first letter and did not personally read it in its entirety because she was scared and did not want a visual in her head of anything Campbell had to say to her. She did read the second letter. T.D. testified she believed the letters to be from Campbell because of the information on the envelopes and the personal details contained in the letters.

The first letter, postmarked April 7, 2014, was four written pages. Portions of the first letter, of which T.D. was aware, contained requests for money and stated: "[I]t'll be very wise to take care of me while I'm in here[. T]his is not a threat[. I]t's not a demand[. I]'m asking you to make a wise decision." The Wichita Police Department located a fingerprint of Campbell's right middle finger on the first page of the letter, as well as a fingerprint for Michael Felix Hart on the outside of the envelope.

The second letter postmarked April 23, 2014, was very short and stated in its entirety:

"'OKAY'
"[I]f this is the way you want it . . . {so be it}.'
"[Y]ou can't say I didn't try to find a way to forgive you.
"(HAVE A WONDERFUL YEAR!)"

The Wichita Police Department did not find any fingerprints on the second envelope or letter. T.D. testified she believed that the "have a wonderful year" comment meant that Campbell was going to see her in 2015, and this concerned her.

Campbell testified in his own defense and disputed that the State had proved the handwriting was his. He explained that his fingerprint was on the first letter because "[s]ome dude named Big Charlie" wrote the letter and handed it to him to read, telling Campbell that once the money appeared "on your books . . . you better give me all of it." Campbell testified he begged him not to send the letter because he wanted nothing to do with T.D.

The State charged Campbell with one count of stalking, contrary to K.S.A. 2013 Supp. 21-5427(a)(2), (b)(2)(B), a severity level 5 person felony. Campbell's case proceeded to a jury trial, and Campbell exercised his right to represent himself after multiple warnings and discussions with the trial court regarding the dangers and struggles in doing so. The jury convicted Campbell as charged. At sentencing, Campbell was represented by an attorney who filed a motion for a downward dispositional departure. The district court denied his departure motion and sentenced Campbell to 136 months' imprisonment.

3

Campbell timely appeals. For clarity, additional facts will be addressed in the analysis as necessary.

*Campbell's Claims on Appeal*

On appeal, Campbell makes several arguments both in the brief filed by his appointed appellant counsel and his pro se supplemental brief. First, he argues that his stalking conviction is not supported by sufficient evidence. Second, he argues his rights under the Confrontation Clauses of the Sixth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights were violated. Third, he argues his substantive due process rights were violated when the district court denied his request for standby counsel after Campbell chose to exercise his right to represent himself. Finally, in his statement of issues in his supplemental brief, he lists the State committed a *Brady* violation when it allegedly failed to disclose all its discovery material to him; however, he does not include this issue in his brief's analysis. Each argument will be addressed in turn.

*The stalking conviction is supported by sufficient evidence.*

First, Campbell argues that his stalking conviction is not supported by sufficient evidence. Specifically, he argues the State's failure to provide the jury with a known sample of his handwriting to compare to the letters sent to T.D. is fatal to his conviction. He also briefly states that because there were no fingerprints on the second letter, the State failed to establish a course of conduct.

"'When the sufficiency of evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Rosa*, 304 Kan. 773, 432-33, 371 P.3d 915 (2016). "'In making a

4

sufficiency determination, the appellate court does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility.' [Citation omitted.]" *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016). It is only in rare cases where the testimony is so incredible that no reasonable factfinder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

> "A conviction of even the gravest offense may be sustained by circumstantial evidence. Circumstantial evidence, in order to be sufficient, need not rise to that degree of certainty which will exclude any and every other reasonable conclusion. Instead, circumstantial evidence affords a basis for a reasonable inference by the jury regarding a fact at issue." *State v. Logsdon*, 304 Kan. 3, Syl. ¶ 3, 371 P.3d 836 (2016).

"There is no requirement that a criminal defendant challenge the sufficiency of the evidence before the trial court in order to preserve it for appeal." *State v. Farmer*, 285 Kan. 541, 545, 175 P.3d 221 (2008).

In order for the jury to find Campbell guilty of stalking T.D., the State was required to prove beyond a reasonable doubt that Campbell engaged in a course of conduct targeted at T.D. with knowledge that the course of conduct would place T.D. in fear for her safety. See K.S.A. 2013 Supp. 21-5427(a)(2); PIK Crim. 4th 54.460 (2016 Supp.).

Here, even without a sample of Campbell's handwriting, there was sufficient evidence for a jury to convict him of stalking. T.D. testified that the return address on both letters came from Campbell at the Lansing Correctional Facility. Statements in the first letter referenced specific things about Campbell and T.D.'s prior encounters that led to his previous stalking conviction and her testimony at that trial. The letter stated that T.D.'s testimony cost him a year of his life and that it would "be wise" for T.D. to do the

right thing and send him money because it was her fault he was in prison. The Wichita Police Department found Campbell's fingerprint on the letter.

T.D. testified that just seeing Campbell's name on the envelope put her in fear and she "had a moment of freakout because then [she] felt like [Campbell] was right here again in [her] presence." T.D. also testified that she only read portions of the first letter because she was so fearful of Campbell that she did not want a visual of anything he had to say to her in her mind. The jury examined the letters. The first letter threatened T.D. by telling her she needed to pay Campbell money because she put him in prison and referenced that from his court papers he knew she was self-employed, her residential address, and her age. The second letter then implied that because she had not sent him money that he would see her after the year was up.

Although there was not a fingerprint on the second letter and the State did not admit a known handwriting sample, a conviction of even the gravest offense can be based entirely on circumstantial evidence. See *Logsdon,* 304 Kan. at 25. The State presented evidence that Campbell's fingerprint was on the first letter and the jury was able to compare the handwriting with the second letter, and to determine that, together, the two letters created a course of conduct by Campbell.

The jury also heard directly from Campbell regarding his version of events. He testified that he did not write the letters, but, rather, it was "[s]ome dude named Big Charlie." As reflected in its verdict, the jury did not find Campbell's account credible.

Campbell misconceives of the role of an appellate court: it is not our role to retry the case. We do not reweigh the evidence as he now asks us to do, nor do we assess the credibility of witnesses. In the current instance, we find that the evidence, when viewed in a light most favorable to the State, was sufficient for a rational fact-finder—the jury— to find Campbell guilty of stalking beyond a reasonable doubt.

6

*Campbell's confrontation rights were not violated.*

Second, Campbell argues his rights under the Confrontation Clauses of the Sixth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights were violated. Specifically, he argues that his right to confront his accusers was violated because the State did not produce testimony from the detective who opened the letters in T.D.'s presence.

"An appellate court employs an unlimited standard of review when addressing whether a defendant's right to confront witnesses under the Sixth Amendment has been violated." *State v. Williams*, 306 Kan. 175, 181, 392 P.3d 1267 (2017). "The Sixth Amendment, made applicable to the States via the Fourteenth Amendment to the United States Constitution, provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' [Citation omitted.]" *State v. Latuner*, 289 Kan. 727, 731, 218 P.3d 23 (2009); see *Pointer v. Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965). Section 10 of the Kansas Bill of Rights states: "In all prosecutions, the accused shall be allowed . . . to meet the witness face to face."

"It has long been recognized that . . . the right of confrontation under the United States Constitution and the right to meet the witnesses 'face to face' under Section 10 of the Kansas Bill of Rights are satisfied when defendant has had an opportunity to cross-examine the witnesses against him.[Citations omitted.]" *State v. Busse*, 231 Kan. 108, 111, 642 P.2d 972 (1982).

"Ordinarily, the failure to specifically base a trial objection on the Confrontation Clause precludes appellate review of that issue." *State v. Jones*, 295 Kan. 1050, 1054, 288 P.3d 140 (2012); see *State v. McCaslin*, 291 Kan. 697, 708-09, 245 P.3d 1030 (2011) (holding issue on right of confrontation not preserved on appeal with a hearsay objection

made at trial); *State v. Bryant*, 272 Kan. 1204, 1208, 38 P.3d 661 (2002) (declining to entertain a Confrontation Clause challenge for the first time on appeal).

Here, at trial, Campbell did not formally make a specific and timely objection on the grounds of the Confrontation Clause. This should preclude appellate view of this issue. See *Jones*, 295 Kan. at 1054. However, in a bench conference outside of the presence of the jury discussing what Campbell could and could not ask of T.D. regarding portions of the letters, the following exchange occurred:

"MR. CAMPBELL: She mentioned that the detective read the letter, some of the letter, to her. I would like to cross examine this detective, this officer, for the credibility of her testimony.

"THE COURT: Who's the officer?

"[THE STATE]: That would be Dwain Diehl.

"THE COURT: Did he make a report?

"[THE STATE]: He made a report.

"THE COURT: Does it reference what sections of the letters he read?

"[THE STATE]: It advised that he read the letters in full.

"MR. CAMPBELL: In full.

"THE COURT: Okay. Then you can ask her you were read the letters in full. There's documentation saying you read the letters—you were read the letters in full but you say you only yourself read part of the letters. You can ask her that and ask her what she remembers about the letters. It's not a question of what was actually read to her. It's a question of what she remembers, what her reaction was to what she remembers being read or learning about those letters. Do you understand that?

"MR. CAMPBELL: Yes. She stated on record that the part of the letter that the detective read is the part that put her in fear, Your Honor. I would like to be able to cross examine this detective on this report.

"THE COURT: Then subpoena him.

"[THE STATE]: Your Honor—

8

"THE COURT:           That's always been your right.

"MR. CAMPBELL:  It was the State's endorsed witness.

"THE COURT:           They don't have to call the witnesses if they don't want to. It's their witnesses. They can call the witnesses they want to call.

"MR. CAMPBELL:  Under the Sixth Amendment I have the right to face the accusers.

"THE COURT:           You are. [T.D.]

"MR. CAMPBELL:  The detective wrote the affidavit of probable cause. He's also an accuser, Your Honor.

"THE COURT:           No, he's not. He's the complaining witness. The alleged victim is [T.D.] She's on the stand. You're questioning her. You're confronting her. Bring [T.D.] back in."

Even if we would construe this colloquy as sufficient to preserve the confrontation issue for appellate review, Campbell's argument is without merit. He was not denied the right to confront the witnesses against him. T.D. testified to what she knew of the letters and the portions that she read. Further, Campbell personally cross-examined her. T.D. was the victim in this case accusing him of stalking—not the detective. Campbell had the right to subpoena the detective in this case but chose not to do so. Campbell's rights under the Confrontation Clause of the Sixth Amendment and § 10 of the Kansas Constitution Bill of Rights were not violated.

Campbell also briefly raises an argument that the State failed to meet its burden of proof when it did not to produce the detective to testify regarding the "chain of evidence."

In *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009), our Supreme Court specifically noted:  "K.S.A. 60-404 dictates that evidentiary errors shall not be reviewed on appeal unless a party has lodged a timely and specific objection to the alleged error at trial." Further, Kansas Supreme Court Rule 6.02(a)(5) (2018 Kan. S. Ct. R. 35) requires an appellant's brief contain:

9

> "The arguments and authorities relied on, separated by issue if there is more than one. Each issue must begin with citation to the appropriate standard of appellate review and a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on. If the issue was not raised below, there must be an explanation why the issue is properly before the court."

Moreover, a point raised incidentally in a brief and not argued therein is deemed waived and abandoned. *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015).

Here, Campbell made no timely and specific objection to the admission of the evidence based on an alleged error in the chain of custody. He also failed to explain why this issue, which was not raised below, is properly before this court. Finally, Campbell merely raises this point incidentally in his brief and does not present any authorities to support his argument. Campbell failed to preserve this issue for appellate review.

*Campbell's due process rights were not violated.*

Campbell argues his substantive due process rights were violated when the district court denied his request for standby counsel after Campbell chose to exercise his right to represent himself. Specifically, he argues "[t]he pretrial court sessions and the jury trial court session had violated [his] due process right to the Sixth Amendment when it failed to appoint Campbell a defense standby counsel as a [consultant] and advisory for jury trial, even when he petition[ed] the court for one before jury trial."

In *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), the United States Supreme Court held that the Sixth Amendment, as made applicable to the states by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right to self-representation. Our Supreme Court has had several occasions to discuss and illuminate the *Faretta* holding. See *State v. Vann*, 280 Kan. 782, 793, 127 P.3d 307 (2006); *State v. Graham*, 273 Kan. 844, 850, 46

P.3d 1177 (2002); *State v. Collins*, 257 Kan. 408, 411, 893 P.2d 217 (1995). In *Faretta*, it was also noted that a state may appoint "standby counsel," even over a defendant's objection, to assist the pro se defendant in his or her defense. 422 U.S. at 834 n.46.

The Kansas Supreme Court specifically held:  "While a party has the right to represent himself or herself or be represented by counsel, he or she does not have the right to a hybrid representation." *State v. Holmes*, 278 Kan. 603, 620, 102 P.3d 406 (2004) (citing *State v. McKessor,* 246 Kan. 1, 12, 785 P.2d 1332, *cert. denied* 495 U.S. 937 [1990]).

The appointment of standby counsel for a pro se litigant rests within the sound discretion of the trial court. *State v. Matzke,* 236 Kan. 833, 837, 696 P.2d 396 (1985). A judicial action constitutes and abuse of discretion if the action (1) is arbitrary, fanciful or unreasonable; (2) the action is based on an error of law; or (3) the action is based on an error of fact. See *State v. Mosher,* 299 Kan. 1, 3, 319 P.3d 1253 (2014).

An explanation of Campbell's road to self-representation is helpful here. Campbell first expressed his desire to represent himself at a hearing in December 2014. At that time, the district judge walked through an extensive description of Campbell's rights in self-representation and the "numerous dangers and disadvantages" to self-representation. At the time of this hearing, which occurred on a Friday, Campbell's trial was set for the following Monday. The district judge continued his trial to allow him time decide if he truly wanted to represent himself. The judge indicated that he would rule on Campbell's oral motion for self-representation after the weekend. At the Monday hearing, Campbell requested a competency evaluation, which delayed the district court's ruling on his request of self-representation. Campbell was ultimately deemed competent to proceed to trial.

11

Campbell's request for self-representation was finally addressed at a hearing on March 20, 2015. Before granting Campbell's request, the district judge engaged in a thorough discussion with Campbell, including an explanation of the risks of self-representation and that such an action would be an "enormous undertaking." During the discussion, Campbell told the district judge that he did not want his current appointed counsel to remain as standby counsel and he wanted her removed from his case. The judge stated he did not have a problem with his current counsel not acting as standby counsel, but he did have a problem with Campbell "being half-way in and half-way out," and that he is "either representing [him]self or [he's] not." The district court judge reiterated multiple times that "the Court considers it detrimental for the defendant not to accept or employ counsel to represent him or her," and that, although required to give this warning, even if the court were not, the court still would inform Campbell that "[i]t is not in your best interest to represent yourself." The district court judge further elaborated that he had granted several motions for self-representation in his time on the bench and that "without question, they have all ended badly for the defendant." Undeterred, Campbell persisted in his request, and the district court granted his motion.

At another hearing on March 30, 2015, Campbell requested standby counsel and told the court that he believed that if he decided to change his mind, standby counsel should be there to take over his representation. The district court judge explained to Campbell that standby counsel was at the discretion of the court. The judge further explained that standby counsel did not represent Campbell, would not be working for him, and he would not be able to direct the attorney. The district court judge indicated that his previous counsel would most likely be appointed as standby counsel. Campbell told the judge that she had been removed from his case and he had sent a letter to the disciplinary administrator regarding her representation of him. The district court judge told Campbell that he would check with the previous judge to find out what occurred at the previous hearing and then a decision would be made regarding standby counsel.

12

On April 17, 2015, at a hearing, Campbell again requested that the court appoint standby counsel and argued that he had a Sixth Amendment right to standby counsel. The district court denied Campbell's request after a thorough examination of the law on the subject, noting that the Sixth Amendment does not provide a constitutional right to standby counsel and that denying the request did not violate his constitutional right to self-representation. The judge again ensured that Campbell desired to proceed pro se, and Campbell reiterated that he did.

In the middle of trial, during Campbell's cross-examination of T.D., Campbell again requested standby counsel be appointed. The district judge denied his request as untimely and stated that Campbell had been warned by multiple judges that this would occur. Campbell then stated that he wished to waive his right to self-representation and proceed with appointed counsel. The district court also denied this request stating, in part:

> "As a practical matter, if I were to appoint counsel to actively represent you, that counsel would not step in and continue the trial at this point in time. That counsel, in all likelihood, would request a continuance of probably several weeks. We would have to declare a mistrial, start all over again with a new jury sometime down the road, maybe months later.
> "As [the State] has stated, Mr. Campbell, you have been warned repeatedly by different judges, not just myself, as to the risks of self-representation. It's kind of like a case of buyer's remorse. You got what you wanted and now you don't like it. You want to change it. It's also akin to changing horses in the middle of the stream. It's not a good idea. There are all kinds of arguments against it, both judicial economy, scheduling of cases.
> "You wanted to proceed pro se. You are proceeding pro se. If the appellate courts ultimately decide—if you are convicted and the appellate courts ultimately decide I should have granted this request, they'll tell us that at that time and you'll get the request at that time. But as of today, I'm going to deny your request for appointment of active counsel and we'll proceed on the basis that you've requested a considerable time before the start of this trial of representing yourself."

13

As noted above, Campbell does not have a constitutional right to hybrid representation, and the appointment of standby counsel is within the sound discretion of the trial court. See *Holmes*, 278 Kan. at 620; *Matzke*, 236 Kan. at 837. At the March 20, 2015 hearing, the district court thoroughly advised Campbell of the dangers and disadvantages he would face in proceeding with self-representation. Knowing these risks, Campbell knowingly and voluntarily waived his right to counsel and chose to proceed pro se. The court did not abuse its discretion in denying Campbell's requests for standby counsel, especially when it reiterated to Campbell on numerous occasions the dangers of proceeding pro se and that he would not be able to direct standby counsel how to proceed on his case.

We further note that on appeal Campbell does not raise the district court's denial of his midtrial request for appointed counsel, neither in the brief submitted by appellate counsel nor in his pro se supplemental brief. An issue not briefed is deemed to be waived or abandoned. See *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016); Kansas Supreme Court Rule 6.02 (a)(5) (2018 Kan. S. Ct. R. 34).

In any event, such claim would appear to be without merit. In an unpublished opinion by this court, it is persuasively noted:

> "The right to counsel, however, is not a limitless one. As we have suggested, a criminal defendant may not change positions on self-representation in bad faith or in a way that materially disrupts judicial proceedings. See *John-Charles v. California*, 646 F.3d 1243, 1250 (9th Cir. 2011) (no error in denying defendant's request made in the middle of trial to rescind waiver of counsel); *United States v. Leveto*, 540 F.3d 200, 207 (3d Cir. 2008) (suggesting no abuse of discretion in denying defendant's request for counsel on the day of trial after granting an earlier motion for self-representation.)" *State v. Rassel*, No. 107,336, 2013 WL 1688390, at *3 (Kan. App. 2013) (unpublished opinion).

14

Here, the district court held during trial that Campbell's request for appointed counsel was untimely and that it would have been especially disruptive and vitiate the trial. This change in position on self-representation would have materially disrupted the judicial proceedings. There was no error in denial of Campbell's request, and there was no abuse of discretion in denying his requests for appointment of standby counsel because those rulings were not arbitrary, fanciful, or unreasonable or based on an error of law or fact.

*The State's alleged failure to disclose exculpatory evidence is not properly before this court.*

In his statement of issues in his supplemental brief, Campbell lists the State committed a *Brady* violation when it allegedly failed to disclose all its discovery material to him; however, he does not include this issue in his brief's analysis.

As previously discussed, an issue not briefed by the appellant is deemed waived or abandoned. *Williams*, 303 Kan. at 758; Kansas Supreme Court Rule 6.02(a)(5) (2018 Kan. S. Ct. R. 35) (appellant's brief must contain "[t]he arguments and authorities relied on"). Campbell has waived this issue on appeal for failure to brief to issue.

Affirmed.