No. 76,205

STATE OF KANSAS, *Appellee*, v. ESSEX T. SIMS, *Appellant*.

(936 P.2d 779)

Opinion filed April 18, 1997.

*Richard Ney*, special appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Doyle Baker*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: Essex T. Sims appeals his jury convictions of one count of first-degree murder, one count of criminal discharge of a firearm at an occupied building, one count of criminal possession

of a firearm, and two counts of aggravated battery, resulting from his participation in a drive-by shooting.

*Factual background*

In late March 1995, Courtney Fair, Randy Lattimore, and Michael Vann were all shot on the porch of the home of Aletha Thomas on North Fountain Street in Wichita, Kansas, during a drive-by shooting. Fair suffered head and shoulder wounds and was permanently blinded in his right eye. Vann sustained bullet wounds to his back and leg. Lattimore was shot through his chest and abdomen and bled to death while undergoing surgery.

Those present at the scene included Thomas' grandsons, William Robinson and Al Smith, her granddaughter Aretha Ransom, her step-granddaughter Angela Fair, and some of their friends, including Carlton Stokes.

Police investigators recovered 15 shell casings primarily along the street outside Thomas' residence, but discovered one inside her kitchen. Two handguns, a Glock 9mm and a Grendel .380, were found hidden inside Thomas' clothes dryer. Two of the shell casings had been fired from the Glock, and none had been fired from the Grendel. Eight of the shell casings had been fired from a different 9mm weapon, two more from a different .380 weapon, and all four of the remaining casings from an additional 9mm weapon. Two vehicles parked across the street from Thomas' home were damaged by gunfire.

Both Courtney Fair and William Robinson recognized Essex Sims as one of the persons who had shot at them. Fair, who knew Sims, told the police that Sims had fired a gun at the house from the passenger side of a brown Monte Carlo driven by Sims' brother Cleave. Although he did not tell the police that he recognized the Sims brothers, Robinson described and identified the brown Monte Carlo. Michael Vann, who was visiting from out of town and did not know the Sims, told the police the first car was a '78 or '79 brown Monte Carlo and was able to describe its passenger as one of the shooters. Vann said the shooter was a light-skinned black male, with hair 1 or 2 inches long, wearing a North Carolina University hat and shirt.

The morning after the shooting, a police detective showed Fair and Vann a photo array containing a picture of Sims. Fair selected Sims from the array. Although he was not positive, Vann stated the shooter was either Sims or another person in the array.

One of Thomas' neighbors, Shenina Martin, was outside when the shooting occurred. She saw three cars, each with several occupants, traveling slowly, almost bumper to bumper, down the street. She heard gunfire originating from the cars and some return fire from the house. She heard between 10 and 20 shots.

Sims and Cleave were arrested, charged, and jointly tried. The prosecution, believing the shooting was gang related, moved to introduce evidence of gang affiliation and practices through the testimony of Officer Kent Bauman, a gang expert. Angela Fair, Shenina Martin, and Al Smith had all indicated that about 20 minutes prior to the shooting, at least one car had driven by Thomas' home and gang signs had been exchanged between the car's occupants and individuals on Thomas' porch. After a hearing on the motion, the trial court ruled the evidence would be admissible.

At trial, Officer Bauman defined a gang and listed the police criteria for determining whether an individual was either a member or an associate of a gang. He identified Sims as a known member of the Neighborhood Crips and testified that the Crips wore North Carolina gear. Cleave was identified as a Crips associate due to the fact that he had been arrested for this gang-related drive-by shooting with another gang member. Randy Lattimore was known to be an associate of the True Boys in June 1993, a gang connected with the Folks or the Black Gangster Disciples at the time of trial. Michael Vann was identified as more or less an associate of the Random Street Crips while he was in Wichita. Courtney Fair was identified in October 1992 as a Fountain Street Crip, but was discovered to be a Random Street Crip during the investigation of the shooting.

Bauman testified that flashing signs can be a sign of disrespect for a gang and could be sufficient provocation to conduct a drive-by shooting. He declared that gang feuds and rivalries change from year to year and that many things could start a feud, ranging from disrespect, to territory infringement, to drugs, to girlfriends, to

flashing signs. Bauman stated that Al Smith told him a car had driven by Thomas' home; a person had flashed a sign for "BK," meaning "Blood killer"; and an unknown girl from Thomas' yard had flashed back "B" for "Blood."

This evidence was introduced without objection. Following Bauman's direct examination, the court instructed the jury on the limited purpose for which the gang testimony could be received. The State had not mentioned the testimony regarding gang affiliation or practices during its opening statement. Sims' attorney, however, told the jury during opening remarks about the gang affiliations of the various individuals.

At trial, none of those who had been present at Thomas' house said they heard return fire or saw anyone firing back. No one admitted to possessing the weapons found hidden in the clothes dryer.

During the presentation of Sims' defense, his witnesses pointed out persons who were known to have been present at the shooting, but who were never interviewed by the police. Sims' aunt, who lived down the street from Thomas, testified that he often came to visit his cousin at her home. Sims also called the owner of one of the vehicles that had been damaged, who said she had found a bullet in her front seat which had not been collected by the police.

Cleave's final witness was Lamont Sanders, who was riding in the back seat of the Monte Carlo when gunfire broke out. He claimed he was going with the Sims to see their cousin. He denied having knowledge of any cars following Sims' vehicle or of any weapons in the vehicle. Sanders stated that when they turned onto Fountain Street, he saw Carlton Stokes move to the corner of Thomas' house, pull out a Glock, and point it at Sims' car. He ducked down onto the seat when the shooting began and did not look back up until several blocks later.

Sims did not object to the court's proposed jury instructions. The court refused to give a self-defense instruction requested by Cleave. The jury returned a guilty verdict on all counts. The court imposed a sentence of life for the felony-murder charge and consecutive sentences for the other counts, totalling an additional 140 months.

Although Sims' notice of appeal was filed 1 day late, we issued a show cause order, after which we decided to retain jurisdiction.

*Admission of gang affiliation and practices evidence was not error.*

Sims did not object to the introduction of the gang evidence at trial. In fact, his attorney initiated the discussion of gang affiliations during his opening statement prior to the presentation of the State's case. We previously held in *State v. Cheeks*, 258 Kan. 581, 593, 908 P.2d 175 (1995):

> "A party must make a timely and specific objection to the admission of evidence at trial in order to preserve the issue for appeal. K.S.A. 60-404 states that a verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection. See *State v. Peckham*, 255 Kan. 310, 327, 875 P.2d 257 (1994); *State v. Johnson*, 255 Kan. 252, 254, 874 P.2d 623 (1994). By failing to make a contemporaneous objection at trial, the defendant failed to preserve this issue for appeal."

In *State v. Peckham*, 255 Kan. 310, 327, 875 P.2d 257 (1994), we reiterated that a party must still make a contemporaneous objection at trial even when an unfavorable ruling on an evidentiary question is received prior to trial.

Nowhere does Sims point out a contemporaneous objection to any of the gang evidence testimony he now claims was prejudicial. Furthermore, some of the complained-of testimony was elicited in response to questions during defense cross-examination. This issue has not properly been preserved for appeal.

Sims claims that we have unlimited de novo review over this issue as it infringes on his constitutional right to a fair trial, citing *Southwest Nat'l Bank of Wichita v. AGT Constr. Mgt., Inc.*, 241 Kan. 257, 265, 736 P.2d 894 (1987). This case provides absolutely no support for his proposition. Sims later refers to *Estelle v. Williams*, 425 U.S. 501, 503, 48 L. Ed. 2d 126, 96 S. Ct. 1691 (1976), to claim that the right to a fair trial in a criminal case is a fundamental liberty secured by the Fourteenth Amendment. However, as we pointed out in *State v. Thomas*, 252 Kan. 564, 573, 847 P.2d 1219 (1993), where the defendant argued he was deprived of his

right to a fair trial by rulings preventing him from presenting his theory of defense, such a right is subject to statutory rules and case law interpretations of rules of evidence and procedure. Sims was bound by the requirement of a contemporaneous objection at trial, and the admission of this evidence cannot form grounds for a new trial.

At oral argument, Sims asserted the gang evidence was so prejudicial that we should disregard the contemporaneous objection requirement and examine the merits of the issue. Yet, it is clear that our standard of review regarding a trial court's admission of evidence, subject to exclusionary rules, is abuse of discretion. *State v. Haddock*, 257 Kan. 964, 978, 897 P.2d 152 (1995). "Discretion is abused only when judicial action is arbitrary, fanciful, or unreasonable, or when no reasonable person would adopt the trial court's view." 257 Kan. at 978.

Bauman's testimony regarding gangs and gang affiliation helped explain the lack of apparent motive for this crime, regardless of the strength or weakness of the State's evidence of gang activity. As gang activity was the State's proposed motive for the drive-by shooting, such evidence was clearly relevant and related to the crimes charged. The evidence was therefore admissible under our prior holdings of *State v. Tran*, 252 Kan. 494, 505, 847 P.2d 680 (1993), and *State v. Toney*, 253 Kan. 651, 655, 862 P.2d 350 (1993), and its admission cannot be deemed an abuse of discretion. The evidence was properly admitted, received a proper limiting instruction, and was not the subject of a proper objection. This issue has no merit, even had it been properly preserved for appeal.

Sims also claims that the admission of the gang testimony violated K.S.A. 60-455, which bars the admission of evidence of other crimes or civil wrongs. This point was not raised below. We stated plainly in *State v. Ji*, 251 Kan. 3, 17, 832 P.2d 1176 (1992), that points not presented to the trial court may not be raised on appeal. In addition, we held in *State v. Bailey*, 251 Kan. 156, 166, 834 P.2d 342 (1992), that membership alone in a gang is not a crime or civil wrong. The fact that Sims might have been a member of a gang was not evidence that he had committed other crimes, and the jury was so instructed. In addition to the failure to properly object or

raise this issue below, defendant presents no error in this issue requiring the grant of a new trial.

*Felony murder does not merge with the underlying conviction of criminal discharge of a firearm.*

Again, this issue was not raised to the trial court. As such, it is not properly before us on appeal. However, an identical argument was made on appeal in *State v. Alderson,* 260 Kan. 445, 459, 922 P.2d 435 (1996), where we pointed out that the legislature determined that criminal discharge of a firearm, K.S.A. 21-4219, does not merge with homicide, citing K.S.A. 21-3436(a)(15).

Sims contends that our ability to reverse a case if a jury instruction was clearly erroneous, despite the failure to object, equally applies if a charge was not valid, as the jury would have been erroneously instructed on the crimes for which it could convict. This validity of a charge argument is not analogous to a clearly erroneous instruction argument. Additionally, Sims goes on to claim that despite the failure to raise the issue below, we lack jurisdiction to sustain a conviction based on an unconstitutional construction of the felony-murder statute. This contention is incorrect, as Sims offers no support for finding the statute to be unconstitutional. Instead, he reiterates case law on the merger doctrine decided prior to the enactment of the statute at issue.

This statute, K.S.A. 21-3436, clearly states that the two crimes of felony murder and criminal discharge of a firearm do not merge and provides:

"(a) Any of the following felonies shall be deemed an inherently dangerous felony whether or not such felony is so distinct from the homicide alleged to be a violation of subsection (b) of K.S.A. 21-3401 and amendments thereto as not to be an ingredient of the homicide alleged to be a violation of subsection (b) of K.S.A. 21-3401 and amendments thereto:

. . . .

(15) any felony offense as provided in K.S.A. 21-4219 and amendments thereto."

K.S.A. 21-4219 sets forth the crimes involving criminal discharge of a firearm.

We find that *Alderson* is exactly on point and clearly correct. Under the cited Kansas statutes and the *Alderson* decision, the two crimes do not merge and this point fails.

*Failure to give a self-defense instruction was not clearly erroneous.*

Although codefendant Cleave Sims' attorney did request a self-defense instruction, no such request was made on Essex Sims' behalf. In refusing to give the self-defense instruction, the trial court explained: "With respect to the self-defense instruction, the defense is we were there but we didn't do anything and, therefore, there's no testimony that would justify a self-defense instruction, and I'll refuse to give it."

We said in *State v. Valentine,* 260 Kan. 431, 433, 921 P.2d 770 (1996):

" 'Absent an instruction request, an appellate court may reverse on the failure to give a jury instruction only if the trial court's failure to instruct was clearly erroneous. The failure to instruct is clearly erroneous only if the reviewing court reaches a firm conviction that absent the alleged error there was a real possibility the jury would have returned a different verdict.' [Citation omitted.]"

In *State v. Tyler,* 251 Kan. 616, 625, 840 P.2d 413 (1992), we stated that before a defendant is entitled to a self-defense instruction, relevant evidence must be presented that (1) the defendant honestly and sincerely believed it necessary to kill in self-defense and (2) a reasonable person would have perceived the necessity of self-defense.

Sims argues the evidence indicates the jury could have found he acted in self-defense because (1) the Glock found inside the Thomas home had fired at least two rounds; (2) two vehicles across the street from the Thomas home were damaged by gunfire; (3) a neighbor heard rapid return fire from the Thomas home; and (4) Lamont Sanders testified he saw Carlton Stokes aim a Glock at Sims' vehicle right before gunfire commenced.

If Sims had acknowledged participation in the gunfire, then this evidence would likely have required the self-defense instruction. However, Sims' theory of defense was that he did not participate in the shooting. He attempted to discredit witnesses who said they saw him holding a weapon. Sanders, the primary defense witness,

denied having knowledge of weapons in Sims' car or of any cars following behind Sims' vehicle.

There was absolutely no evidence proving the subjective component of self-defense, that Sims honestly believed he had to kill in self-defense. The trial court's failure to instruct on self-defense was not clearly erroneous, and this issue fails.

*Consecutive sentences for felony murder and criminal discharge of a firearm do not violate double jeopardy.*

Sims also raises this point for the first time on appeal. We said in *State v. Steadman*, 253 Kan. 297, 306, 855 P.2d 919 (1993), that constitutional grounds asserted for the first time on appeal are not properly before the appellate court to review.

Additionally, this issue has no merit as we have stated numerous times that where the same act or transaction violates two distinctly different statutory provisions, the test to be applied to determine if there are one or two crimes is whether each statute requires proof of an element the other crime does not. Where one statute requires proof of an additional or different element, the crimes are not the same, even though the proof of the crimes may substantially overlap. See *State v. Dunn*, 243 Kan. 414, 432-33, 758 P.2d 718 (1988).

Pursuant to K.S.A. 21-3436, a large number of underlying felonies may support a felony murder charge. It is well-established law in Kansas that multiple convictions and punishments for both felony murder and the underlying felony do not violate double jeopardy. In *State v. Holt*, 260 Kan. 33, 46, 917 P.2d 1332 (1996), we cited a long list of cases where we have upheld separate convictions for both. This issue was not only improperly raised, but is also without any merit.

Affirmed.