No. 85,412

STATE OF KANSAS, *Appellee,* v. CRAIG M. BRYANT, *Appellant.*

(38 P.3d 661)

Opinion filed January 25, 2002.

*Stephen B. Plummer,* of Wichita, argued the cause and was on the brief for appellant.

*Debra S. Peterson,* assistant district attorney, argued the cause, *Boyd K. Isherwood,* assistant district attorney, *Nola Foulston,* district attorney, and *Carla J. Stovall,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: This is Craig M. Bryant's direct appeal from three convictions of first-degree felony murder. The sole issue raised relates to testimony by the former wife of Bryant's co-conspirator, who incriminated Bryant in the crimes.

This is a companion case to *State v. Pink*, 270 Kan. 728, 20 P.3d 31 (2001). Both Malcolm T. Pink, Bryant's half brother, and Bryant admitted in statements to law enforcement officers to being involved in the robbery and shooting of three males in Wichita. But, each pointed to the other as being the shooter and each contended he had no idea a robbery was to take place or that anyone would be killed.

On January 11, 1994, law enforcement officers responded to a shooting call at a residence in Wichita and found three males fatally wounded from gun shots. Erik Carter was shot three times in the head, with two of the shots being contact wounds where the barrel of the gun was touching the head. Travis Wooten was shot six times in the head, three of the shots being from a distance and the others being contact wounds. Jimmy Fox was shot three times in the head, with one contact wound. Upon testing, all of the bullets recovered were shown to be from the same .25 caliber handgun.

The killings were unsolved for 4 years, but in the spring of 1998, additional leads were developed and officers interviewed both Bryant and Pink. After being informed of and waiving his *Miranda* rights, Bryant told Wichita Police Detective Paul O'Mara and FBI Special Agent Charles Prichett the following story.

Bryant and Pink were at Pink's house in Arkansas City, when they decided to go to Wichita because Pink needed some "fast money." Bryant gave Pink a ride to Wichita, with Pink directing him where to go. Pink told Bryant to park a block and a half away from the house they were going to. Bryant did so and the two walked back to their destination. According to Bryant, the occupants of the house would not let him in until they saw Pink, and at that point both were permitted entry. They were shortly thereafter asked to leave by the occupants because someone was coming by to either count or pick up some money. Pink then pulled out a

.25 caliber pistol and told everyone to get on the floor, that a robbery was being performed. Without provocation, according to Bryant, Pink began shooting people in the head. As the two were leaving from the back door, Bryant stated Pink took a gun and a brown paper bag containing money and marijuana. Bryant then drove Pink back to Arkansas City. Sometime during the drive, Pink offered to give some of the money and marijuana to Bryant. Bryant stated that he refused, but he did take $20 for gas. Bryant admitted that the two smoked "some joints" on the way back to Arkansas City.

Seven days later, Bryant was interviewed a second time. He again waived his *Miranda* rights and allowed the interview to be tape recorded. The two accounts were similar, but some facts were changed or added. Bryant stated that prior to entering Wichita, Pink had discussed robbing someone. He admitted that he felt Pink was going to rob someone and that Pink did have a gun. He stated that he saw Pink reload once or twice during the time he was shooting the victims. He further admitted that the brown sack contained from $1,000 to $1,500 in cash. He claimed Pink had driven him away from the Wichita location. He also stated that Pink had said, although it is not clear if this statement was made before or after the killings, that dead people cannot testify as witnesses.

Bryant was interviewed the following day for the third and final time. He again waived his *Miranda* rights and again admitted to additional or changed facts. In his statement, he admitted he knew that Pink was asking him for assistance in an illegal act. He stated that while en route to Wichita, Pink test-fired a .25 caliber pistol out the window of Bryant's car. Bryant could not remember whether he himself had a gun when the two entered the Wichita home, but Bryant remembered not shooting any weapon while in the house.

Bryant was charged with three counts of first-degree murder. At his trial, Gale Pink, the former wife of Malcolm Pink, testified on behalf of the State. She stated that on the night in question, Bryant came and picked up Pink from Pink's house. She said that Bryant asked Pink to go somewhere, and the two left in Bryant's car. Two hours later, the two returned and Pink was emotionally upset and

crying. She noted that she had only seen Pink cry one time in the 9 years they had been married. While in another room, she overheard Pink ask Bryant, "Why did you [Bryant] kill those guys?" She said she did not hear Bryant's response but believed they stopped talking because they noticed her listening. She testified that as she was letting Bryant out the door, he gave her a brown paper bag containing $400 and told her to give the bag to Pink. The next morning, she found another bag on the porch with a handgun in it. She eventually spent the money and threw the gun away. On cross-examination, she stated that Pink told her to not accept the bag of money Bryant had offered her.

The State presented essentially the same case against Pink as it did against Bryant. The trial court refused the State's motion to compel Pink to testify against Bryant, finding that Pink still retained his Fifth Amendment privilege against self-incrimination because his case was on appeal.

The jury convicted Bryant of three counts of first-degree murder on the theory of premeditated, rather than felony, murder. He was sentenced to three consecutive life terms.

Bryant's appeal is centered on the contention that the trial court committed reversible error by admitting a statement from Malcolm Pink, through the hearsay testimony of Gale Pink, in which Pink asked Bryant why he killed the victims. Bryant contends that it was error for the trial court to permit the evidence in under the res gestae exception to the hearsay rules. He argues the statement did not constitute res gestae, and even if it did, the rule should be abrogated by the court. He also argues that the hearsay testimony violated his constitutional rights of confrontation under the Sixth Amendment to the United States Constitution.

Prior to the examination of Gale Pink, a hearing was held in which defense counsel challenged the potential statement of Malcolm Pink by an oral motion in limine. Counsel argued that Malcolm Pink's unavailability for cross-examination made his statement inadmissable hearsay. Anticipating the counter argument of the State, defense counsel recognized that Malcolm Pink's statement would fall under the recent perception exception of hearsay statements, but contended that Gale Pink's statement as to what Mal-

colm Pink may or may not have said would be too unreliable to meet the criteria for a hearsay exception.

The trial court refused to either grant or deny counsel's motion in limine, noting it was unclear as to what Gale Pink's testimony might be. The court told counsel that a contemporaneous objection would be required and that "we'll cross that bridge when we get to it."

During the examination of Gale Pink, as the prosecution was questioning her about statements she might have overheard between Pink and Bryant, defense counsel lodged the following objection: "Objection, Your Honor; hearsay as previously brought up." The judge responded, "I'll overrule the objection on the res gestae exception."

This court has long held, and the rule has been embodied in K.S.A. 60-404, that a " 'verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection.' " *State v. Deiterman*, 271 Kan. 975, 984, 29 P.3d 411 (2001). Additionally, we have held in many cases that "constitutional grounds asserted for the first time on appeal are not properly before the appellate court to review." *State v. Sims*, 262 Kan. 165, 173, 936 P.2d 779 (1997). Moreover, a defendant may not object to the introduction of evidence on one ground at trial, and then assert a different objection on appeal. *State v. Toney*, 253 Kan. 651, 656, 862 P.2d 350 (1993).

The rules above-stated preclude Bryant's argument on appeal based upon a violation of the Confrontation Clause; however, we will consider his argument that the evidence was erroneously admitted under the res gestae exception.

This is not the time nor is it necessary for us to rehash the application of res gestae and the hearsay rule, see *State v. Edwards*, 264 Kan. 177, 203, 955 P.2d 1276 (1998); *State v. Clark*, 261 Kan. 460, 470-71, 931 P.2d 664 (1997); Prater & Kleemee, *Res Gestae Raises Its Ugly Head*, 65 J.K.B.A. 24 (Oct. 1996). Although Gale Pink's testimony was clearly not admissible under the "res gestae" exception, it was nonetheless admissible under the excited utter-

ance exception, to which the defense counsel made reference at the time of trial.

The correct statutory provision under which Gale Pink's testimony was admissible is K.S.A. 60-460(d)(2), which states:

"Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible except:

. . . .

"(d) *Contemporaneous statements and statements admissible on ground of necessity generally.* A statement which the judge finds was made . . . (2) while the declarant was under the stress of a nervous excitement caused by such perception."

An appellate court may uphold the decision of the trial court on grounds alternate to those relied on at the trial level. *State v. Mincey,* 265 Kan. 257, 267, 963 P.2d 403 (1998). The "excited utterance" exception under K.S.A. 60-460(d)(2) allows a hearsay statement to be introduced to prove the truth of the matter when the statement was made under the stress of nervous excitement caused by such perception. Such are the facts in this case because of the emotional state of Malcolm Pink and the close time frame to the triple homicide. The requirements that the event or condition occurred, that it was sufficiently "startling" to show that the declarant perceived it, and the declarant made the statement while under stress of nervous excitement were recognized in *State v. Rowe,* 252 Kan. 243, 250, 843 P.2d 714 (1992). See Barbara, Kansas Rules of Evidence with Evidentiary Objections and Evidentiary Foundations, § 7.6 (3d ed. 1993).

While the trial court made no specific finding as to reliability, we recently held in *State v. Deal,* 271 Kan. 483, 23 P.3d 840 (2001), that reliability can be inferred when the evidence falls within a firmly rooted hearsay exception. Justice Abbott, in a unanimous opinion as to this issue, went on in *Deal* to state:

"The excited utterance exception is a firmly rooted hearsay exception. See *Conner v. State,* 748 So.2d 950, 956 (Fla. 1999) (excited utterance is one of several firmly rooted hearsay exceptions); *State v. Castaneda,* 621 N.W.2d 435, 445 (Iowa 2001) (excited utterance is one of several firmly rooted hearsay exception); *State v. Gates,* 615 N.W.2d 331, 336-37 (Minn. 2000) (excited utterance is firmly rooted hearsay exception satisfying constitutional requirements); *State v. Salgado,* 126

N.M. 691, 696, 974 P.2d 661 (1999) (excited utterance is 'uniformly considered' a firmly rooted hearsay exception and comports to Confrontation Clause requirements); *State v. Dennis*, 337 S.C. 275, 286-87, 523 S.E. 2d 173 (1999) (excited utterance exception has been used and approved for over 200 years and is a firmly rooted hearsay exception). Firmly rooted hearsay exceptions are 'so trustworthy that adversarial testing can be expected to add little to its reliability.' *White v. Illinois*, 502 U.S. 346, 357, 116 L. Ed. 2d 848, 112 S. Ct. 736 (1992). Reliability is, therefore, inferred without any further showing." 271 Kan. at 500-01.

However, under certain circumstances where reliability was not found to exist by the trial court such evidence may be excluded. See *State v. Broyles*, 272 Kan. 823, 840, 36 P.3d 259 (2001); *State v. Hobson*, 234 Kan. 133, 158-59, 671 P.2d 1365 (1983).

The trial court properly admitted this testimony, although the reason stated was improper. But, as we have often stated the trial court will not be reversed if it is right, albeit for the wrong reason. See *State v. Jones*, 267 Kan. 627, 634, 984 P.2d 132 (1999).

Based on the facts in this case, the testimony in issue was not erroneously admitted. The three convictions are affirmed.

DAVIS, J., not participating.

BRAZIL, Chief Judge Retired, assigned.

SIX, J. concurring: The majority notes the trial court relied on res gestae in admitting certain testimony of Gale Pink. I agree with the majority's rejection of res gestae as a rationale for admission and with the K.S.A. 60-460(d)(2) analysis for admission. I write separately in a continuing effort to encourage the bar and bench to analyze this type of evidence under K.S.A. 60-460, the approach intended by the legislature's codification of our evidentiary rules. Res gestae, as an independent evidentiary concept, deserves a proper burial. See *State v. Edwards*, 264 Kan. 177, 203, 955 P.2d 1276 (1998) (Six, J., concurring). I disagree with the majority's observation that this is not the time to rehash the application of res gestae. We should administer last rites with this opinion.