NOT DESIGNATED FOR PUBLICATION

No. 114,984

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

AQUARIUS TERRELL HURT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC R. YOST, judge. Opinion filed June 30, 2017. Affirmed.

*Carl F.A. Maughan*, of Maughan Law Group LC, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., PIERRON and STANDRIDGE, JJ.

*Per Curiam*:  After a jury trial, Aquarius Terrell Hurt was convicted of attempted first-degree murder, aggravated battery, and criminal use of a weapon. On appeal, Hurt argues that the district court made several trial errors:  (1) There was insufficient evidence to prove premeditation; (2) the district court erred in permitting evidence of gang affiliation; and (3) the district court erred in failing to instruct the jury regarding eyewitness identification. Finding no error, we affirm Hurt's conviction.

1

On August 24, 2013, Chandria Young was at the house of her friend, Autumn Ashlock. The women invited Quentin Lawrence, Daijour Parker, and Dominic Gordon to Ashlock's house, where they listened to music and drank alcohol. Young and Gordon were in a relationship at that time. At some point in the evening, Ashlock drove the group to QuikTrip to buy cigars or cigarettes.

While at QuikTrip, Young saw Hurt, whom she knew, and talked to him. Gordon saw Young talking to Hurt and confronted Hurt. Gordon asked Hurt what "set" he was in, meaning what gang he was affiliated with. The exchange escalated into yelling, and ultimately Gordon punched Hurt in the face. Lawrence intervened, apologized to Hurt, shook his hand, and told him Gordon was drunk. Gordon and his group eventually went back to Ashlock's house.

Hurt returned to a birthday party hosted by Alaisha Wright, at which he had been earlier in the evening. Wright reported Hurt was yelling and making a scene at the party and said he was "going to go shoot this dude." Hurt called his brother, Jalen Jones, who was with a friend, Joshua Grier, to ask for a ride. Jones and Grier picked Hurt up in Grier's car, and Hurt told them that he had been punched in the face at QuikTrip. The three men drove to Young's house, but there were no lights on, so they left. Grier, who was in a relationship with Ashlock at the time, believed that Young and Ashlock were together, so they drove to Ashlock's house. When they arrived, Hurt told Grier and Jones that he thought he saw the person who hit him on the porch. Grier parked the car in front of the house and the three men got out.

Young, Ashlock, Lawrence, Parker, and Gordon were sitting on Ashlock's porch and smoking cigarettes when Grier's car pulled up outside. Ashlock walked down to meet Grier in the driveway and asked him what was going on. Hurt told everyone to come

2

down to the street. Ashlock heard Hurt say he wanted to "handle" the QuikTrip incident. Grier asked who hit his brother.

Grier and Gordon squared off to fight in the middle of the street in front of Ashlock's house. At one point, Young stood between them and attempted to keep them from fighting. Parker and Lawrence were standing near the street, but neither got involved in the altercation between Grier and Gordon. Hurt and Jones were standing behind Grier's car. Jones testified that Gordon recognized him as "Scarface" and told the others to "shoot him down."

Shots were fired in rapid succession from the direction of Grier's car. Jones testified at trial that he was the only shooter and that he used two guns. Ashlock testified that she saw Hurt and Jones both shooting. Young said that she saw two shooters behind Grier's car but could not identify who they were; but she stated that no one else—Grier, Gordon, Lawrence, Parker, Ashlock, and herself—had a gun. Neither Parker nor Lawrence saw the shooters, but they both testified that they did not have guns, nor did Grier or Gordon.

Lawrence was struck by five gunshots: twice in the arm, and once each in the neck, back, and torso. Young and Parker tended to Lawrence as he lay in the street, using shirts to apply pressure to the wound in Lawrence's neck. A neighbor who heard the shooting called the police and rendered aid. Emergency personnel arrived, and Lawrence was taken to the hospital.

After leaving the scene of the shooting, Grier drove Hurt and Jones to meet their mother, Tenacious Sergeant, at her sister's house. Hurt and Jones were each holding a gun when they walked into the house. Jones said, "Mama, we are sorry," and Hurt told Sergeant that Gordon had punched him in the face, but neither son explained to her what

happened. Sergeant took the guns from her sons, wrapped them in a shirt and a plastic bag, and hid them in a vacant garage down the street.

Hurt, Jones, and Grier then went to the house of Lillia Parker and Mikalia Smith, where they all showered and changed clothes. Sergeant subsequently arrived at Parker and Smith's house, and told them that if anybody asked, the three men had been there since 10 p.m.

Hurt was charged with attempted first-degree murder, aggravated battery, and criminal use of a weapon. A jury convicted Hurt as charged. Based on these convictions and his criminal history, Hurt was sentenced to 155 months in prison.

ANALYSIS

*Premeditation*

In his first argument on appeal, Hurt contends the evidence was insufficient to prove premeditation, which is an essential element to proving attempted first-degree murder. When the sufficiency of the evidence is challenged in a criminal case, the appellate court must consider all of the evidence in a light most favorable to the prosecution and then determine whether a rational jury could have found the defendant guilty beyond a reasonable doubt. *State v. Parker*, 282 Kan. 584, 597, 147 P.3d 115 (2006). This court does not reweigh the evidence, resolve evidentiary conflicts, or make witness credibility determinations, which would usurp the role of the jury. *State v. Frye*, 294 Kan. 364, 375, 277 P.3d 1091 (2012).

To prove Hurt committed the crime of attempted first-degree murder, the State was required to prove that (1) Hurt performed an overt act toward the commission of first-degree murder, which is defined as an intentional and premeditated killing; (2) he

4

did so with the intent to commit first-degree murder; (3) he failed to complete the commission of the crime; and (4) the act occurred on or about August 25, 2013, in Sedgwick County, Kansas. See K.S.A. 2016 Supp. 21-5301; K.S.A. 2016 Supp. 21-5402; PIK Crim. 4th 53.010 (2012 Supp.).

Hurt contends that there is no evidence that he premeditated murder. While he acknowledges that he said he was going to *shoot* someone, Hurt contends he never said he was going to *kill* someone. Similarly, Hurt claims the evidence shows only that he fired a gun into a group of people, without evidence of what his "goal" was or whether he considered the "outcome" of the shooting. But such direct evidence is not necessary to prove intent. "Premeditation and deliberation may be inferred from the established circumstances of a case when the inference is reasonable." *State v. Lloyd*, 299 Kan. 620, Syl. ¶ 4, 325 P.3d 1122 (2014). "[C]ircumstantial evidence of intent is almost to be expected: 'Intent, a state of mind existing at the time an offense is committed, does not need to be and rarely can be directly proven' through direct evidence. [Citation omitted.]" *State v. Thach*, 305 Kan. 72, 82, 378 P.3d 522 (2016).

"Premeditation does not necessarily mean an act is planned, contrived, or schemed beforehand; rather, premeditation indicates a time of reflection or deliberation." *Lloyd*, 299 Kan. 620, Syl. ¶ 4.

> "Factors to consider when determining whether the evidence gives rise to an inference of premeditation include: (a) the nature of the weapon used; (b) lack of provocation; (c) the defendant's conduct before and after the killing; (d) the defendant's threats and declarations before and during the occurrence; and (e) the dealing of lethal blows after the deceased was felled and rendered helpless." 299 Kan. 620, Syl. ¶ 5.

Here, the circumstantial evidence was more than sufficient to prove Hurt's intent. The incident was instigated when Gordon punched Hurt in the face at QuikTrip. Hurt went immediately to a party, where the host described Hurt as upset and said Hurt

5

declared that he was going to "shoot some dude." Hurt called Jones and Grier to pick him up; in the car, Hurt told them that Gordon had punched him in the face. The three drove to Ashlock's house, where Hurt indicated he saw the person who had punched him on the porch. When Hurt exited the car, witnesses heard him tell everyone on the porch to come down to the street and he wanted to "handle" the QuikTrip incident. As Grier and Gordon were in the street squaring off to fight, Hurt and Jones fired their guns a total of 10 times toward the group; 5 bullets struck Lawrence. After the shooting, Hurt and Jones met up with Sergeant, their mother, where Hurt told her he had been punched in the face earlier in the night. Sergeant assisted her sons by hiding the guns. Hurt, Jones, and Grier then went to their friends' house and showered and changed clothes before being detained.

In addition to the facts set forth above, the evidence reflects Hurt made several statements before and after the incident that showed he was upset about being punched in the face and wanted to "handle" the situation and "shoot" someone. The shooting itself was a disproportionate response to being punched earlier in the evening. A deadly weapon can indicate a premeditation to kill. See *State v. Phillips*, 299 Kan. 479, 499, 325 P.3d 1095 (2014); *State v. Pabst*, 268 Kan. 501, 513, 996 P.2d 321 (2000). Finally, Hurt and Jones allowed their mother to hide evidence after the shooting. A rational factfinder could conclude from the facts presented, and the reasonable inferences drawn from those facts, that Hurt premeditated the murder attempt.

Hurt proposes several alternative inferences that can be drawn from the evidence. He first asserts his intent could have been simply to "fire his weapon in the direction of a bunch of people." Hurt notes that he was 17 years old and intoxicated, which he asserts "would tend to diminish the idea of premeditation" and "question the validity of any conclusion that the defendant specifically intended to kill." Hurt suggests that it was "more likely that he was angry, young, impulsive and intoxicated when he decided to fire a gun." But Hurt's challenges essentially ask this court to reweigh the evidence and draw a different conclusion than that reached by the jury. We decline to do so. See *Frye*, 294

6

Kan. at 375 ("'It is the jury's function, not ours, to weigh the evidence and determine the credibility of witnesses.'").

Construing the evidence in the light most favorable to the State, we find sufficient evidence from which a reasonable factfinder could have concluded that Hurt deliberated and premeditated murder prior to the shooting. Thus, a rational factfinder could have found Hurt guilty beyond a reasonable doubt of attempted first-degree murder.

*Gang affiliation*

The State filed a pretrial motion to admit gang evidence, arguing it was relevant to explain Hurt's motive for an otherwise inexplicable act and to explain witness bias. The district court held a hearing on the motion immediately prior to voir dire. The State asserted that Hurt and Jones were members of the gang Gangster Disciples (GDs), and Lawrence, Parker, and Gordon were members of the gang Piru Bloods (Bloods). The State described an ongoing rivalry between the two gangs in Wichita since 2009, when a member of the GDs was murdered; the GDs believed a member of the Bloods was responsible. The State argued that gang evidence was necessary to explain the motive for "why just a simple punch at a QuikTrip would escalate to the level that it did where Quentin Lawrence is lying on the ground with five bullet holes in his body." Defense counsel responded in the following manner:

> "Well, Judge, obviously even with gang evidence the standard is, is it more probative than prejudicial. We think that gang evidence[,] generally speaking, especially with juries in Sedgwick County, Kansas, is almost always prejudicial. It is usually more prejudicial than probative. I understand that a certain amount of gang evidence regarding the various affiliations and all of that will probably come in as it goes to explain certain actions that happened. And I guess it could be used to, at least, in an argumentative way, to explain contradictions or desires on a witness's behalf to testify one way or another.

7

"I guess my main concern is the extent that we will get into this feud that has been ongoing since 2009. . . . I don't know how much of that the State intends to get into with these witnesses or their expert. But I think that when we start talking about a feud as a basis for why an act happened, that we need to be more—we need to be careful about how much we get into that. . . . So I think we need to make sure there is a limit as to how far into it we can go."

Defense counsel concluded with concerns that the gang-related evidence would expand into other incidents between the GDs and the Bloods that were less relevant. After fully hearing from the parties, the district judge stated that without the gang evidence, "it is almost like the jury is not going to have any idea what is really going on." The court ultimately granted the State's pretrial motion to admit gang evidence on grounds that the feud between the gangs stemming from the 2009 murder was "such an important part of what happened here." But the court placed a limitation on the parties by instructing them they could not introduce evidence of a second 2011 incident, which the court found to be less probative to the issues in the case. Defense counsel did not object further on the matter.

Evidence related to gang affiliation was offered through several witnesses during the trial. The State presented Detective Joseph Stearns as an expert on gang intelligence for the Midwest, to which Hurt did not object. Stearns explained the history of the rivalry between the GDs and the Bloods and applied his expertise to the observations he made while responding to the scene of the shooting in this case. In addition, both the State and defense questioned several fact witnesses about their gang affiliation or knowledge of the gang affiliations of the parties. Hurt never objected at trial to the admission of any gang-related questioning. And defense counsel voluntarily raised the issue of gang affiliation in opening statements, in closing arguments, and in examining the only defense witness, Jones. The defense used Jones' testimony to explain that he was shooting at members of the Bloods, whom he feared would shoot him first.

Hurt argues the district court erred by allowing the parties to introduce evidence that Hurt and other witnesses at trial were affiliated with gangs. Hurt claims the evidence is not relevant and, even if it was, the gang affiliation evidence is more prejudicial than probative under K.S.A. 2016 Supp. 60-455. But the State contends Hurt did not preserve his argument for appeal because he did not lodge a specific or timely objection when the gang evidence was introduced at trial as required by statute. See K.S.A. 60-404 (statutory procedural bar to appealing evidentiary issue unless party makes specific and timely objection at trial that permits trial court opportunity to rule).

In *State v. King*, 288 Kan. 333, 204 P.3d 585 (2009), our Supreme Court put emphasis on the legislature's intent in enacting K.S.A. 60-404, which "dictates that evidentiary errors shall not be reviewed on appeal unless a party has lodged a *timely* and *specific* objection to the alleged error at trial." (Emphasis added.) 288 Kan. at 349. Although our Supreme Court acknowledged that it may have not strictly enforced the rule in the past, the court unequivocally stated in its opinion that "[f]rom today forward, in accordance with the plain language of K.S.A. 60-404, evidentiary claims . . . must be preserved by way of a contemporaneous objection for those claims to be reviewed on appeal." 288 Kan. at 349.

The purpose of requiring a contemporaneous and specific objection to the introduction of evidence is to prevent the use of tainted evidence, thereby avoiding possible reversal while allowing the trial court to fulfill its intended role as gatekeeper of admissible evidence. 288 Kan. at 342, 349. Hurt did not contemporaneously object to any gang-related questioning introduced at trial by the State and, in fact, voluntarily raised the issue of gang affiliation throughout the trial proceedings. Given his failure to lodge a specific and contemporaneous objection, we find Hurt's claims of error regarding the introduction of gang affiliation evidence were not properly preserved for appeal.

9

In so finding, we acknowledge that Hurt's attorney expressed concern at the pretrial hearing about the district court granting the State's motion without limitation; *i.e.*, requiring the gang affiliation evidence to be relevant and to be more probative than prejudicial. Although the court ultimately granted the State's motion, the court apparently was persuaded by Hurt's concerns because the court limited the scope of gang-affiliation evidence that could be introduced. Hurt did not object to the court's ruling in this regard; in fact, the court arguably granted the only request made by the defense. And at trial, defense counsel introduced gang-related evidence within the court's limitation to explain the case to the jury. In its opening statement, defense counsel introduced Hurt and Gordon by explaining their gang affiliations: "The evidence will show that [Hurt] is associated with the Gangster Disciples, the GDs. [Gordon] is a member of the Bloods— the Piru Bloods." Defense counsel asked its only defense witness, Jones, if he was in a gang and whether his gang was "involved in any feuds or skirmishes with any other gang." In its closing argument, the defense connected the gang evidence to explain why Jones shot at the victim:

> "Is it a stretch to imagine that [Jones] believed the Bloods were after him, that they might have guns, as he suggested, that they might have a gun. That is what he thought. [Jones] testified that he believed that they were going to draw down based on what he saw, based on what he heard. Based on what he heard, he believed it was [Gordon] that said if that is Scarface [Jones] shoot him down."

As a preliminary matter, we find Hurt's challenge to the district court's pretrial order to be disingenuous given Hurt used the gang affiliation evidence to support his own theory of defense. But even if he had not used the challenged evidence to his own benefit, Hurt's pretrial challenge to the evidence has not been preserved for review on appeal because he failed to contemporaneously object when the evidence subsequently was introduced at trial. Given the underlying rationale for requiring a contemporaneous objection, "a pretrial objection by itself is not timely because the evidence may be different from that submitted at the pretrial hearing or the evidence may be viewed

10

differently by the judge in the context of all of the evidence and argument heard at trial." *State v. Kelly*, 295 Kan. 587, 590, 285 P.3d 1026 (2012); see *State v. Nunn*, 244 Kan. 207, 213, 768 P.2d 268 (1989) (pretrial ruling is not sufficient because the "materiality of the proposed evidence may not become actually apparent until other evidence has been admitted"). For these reasons, a pretrial challenge to admission of evidence will not be deemed timely unless the challenging party renews the objection when the opposing party seeks to introduce it at trial or the court has granted the challenging party's request for a continuing objection. See *State v. Richard*, 300 Kan. 715, 720-21, 333 P.3d 179 (2014) (pretrial objection must be renewed at trial); *State v. Berriozabal*, 291 Kan. 568, 579-80, 243 P.3d 352 (2010) (pretrial challenge to admission of evidence insufficient to preserve objection for appellate review when party does not renew objection at trial or request continuing objection).

Hurt's pretrial objection did not meet the specificity requirement of K.S.A. 60-404 either. Although Hurt asserts in his appellate brief that the gang affiliation evidence simply was not relevant, the only argument Hurt asserted at the pretrial hearing was that the evidence was unduly prejudicial. "[A] defendant may not object to the introduction of evidence on one ground at trial, and then assert a different objection on appeal." *State v. Bryant*, 272 Kan. 1204, 1208, 38 P.3d 661 (2002). Moreover, Hurt asserted at the pretrial hearing that gang evidence is *generally* more prejudicial than probative, but did not specify how it was prejudicial in this case. *Richmond*, 289 Kan. at 429 ("[T]he trial court must be provided the specific objection so it may consider as fully as possible whether the evidence should be admitted and therefore reduce the chances of reversible error.").

Given his failure to lodge a specific and contemporaneous objection, we find Hurt's claims of error regarding gang affiliation was not properly preserved for appeal.

11

*Jury instruction*

In his final issue on appeal, Hurt argues the district court erred in failing to instruct the jury on eyewitness identification. Hurt acknowledges that he did not request the instruction or object to the court's failure to give the instruction at trial. As a result, this court's standard of review is whether the failure to give the instruction was clearly erroneous. K.S.A. 2016 Supp. 22-3414(3); see *State v. Duong*, 292 Kan. 824, 835, 257 P.3d 309 (2011). To find the failure to instruct clearly erroneous, this court must be "firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred." *State v. Mann*, 274 Kan. 670, 677, 56 P.3d 212 (2002).

In any criminal action in which eyewitness identification is a critical part of the prosecution's case and there is a serious question about the reliability of the identification, a cautionary instruction should be given advising the jury as to the factors to be considered in weighing the credibility of eyewitness identification testimony. *Mann*, 274 Kan. at 677-78; *State v. Saenz*, 271 Kan. 339, 353, 22 P.3d 151 (2001).

Hurt contends that unreliable eyewitness testimony of several witnesses identified him as a shooter. He claims that the witnesses observed him in poor light after drinking alcohol, under a heightened emotional state because of the fight, where their attention would have been drawn toward the fight and not the shooter, and in a situation in which events happened quickly. Hurt contends that the jury should have been instructed according to PIK 4th Crim. 51.110 (2013 Supp.), which provides:

> "The law places the burden upon the State to identify the defendant. The law does not require the defendant to prove (he) (she) has been wrongly identified. In weighing the reliability of eyewitness identification testimony, you should determine

whether any of the following factors existed and, if so, the extent to which they would affect accuracy of identification by an eyewitness. Factors you may consider are:

"1.  The opportunity the witness had to observe. This includes any physical condition which could affect the ability of the witness to observe, the length of the time of observation, and any limitations on observation like an obstruction or poor lighting;

"2.  The emotional state of the witness at the time including that which might be caused by the use of a weapon or a threat of violence;

"3.  Whether the witness had observed the defendant(s) on earlier occasions;

"4.  Whether a significant amount of time elapsed between the crime charged and any later identification;

"5.  Whether the witness ever failed to identify the defendant(s) or made any inconsistent identification; and

"6.  Whether there are any other circumstances that may have affected the accuracy of the eyewitness identification."

But the eyewitness identification cautionary instruction is not appropriate given the facts presented in this case. Strictly speaking, no witness provided any identification testimony in this case. Hurt does not deny that he was at the scene of the crime; testimony from several eyewitnesses, including Jones, confirms Hurt was present and standing near Grier's car at the time of the shooting. Hurt claims that witnesses provided identification testimony that he was a shooter, which is a critical issue in this case. But this eyewitness testimony about Hurt's actions on the night of the incident is not equivalent to identification testimony. See *Mann*, 274 Kan. at 679 ("The reliability of the identification and credibility of an eyewitness are not the same thing."); *State v. Shanklin*, No. 97,749, 2008 WL 4291469, at *3 (Kan. App. 2008) (unpublished opinion) (rejecting application of eyewitness identification instruction to eyewitness testimony in general and holding "there was no dispute that Shanklin was at the garage, so identification was not at issue"); *State v. Aldrich*, No. 92,364, 2006 WL 538267, at *4-5 (Kan. App. 2006) (unpublished opinion) (identification of perpetrator not an issue, so the differences in the various versions of what transpired might have raised at most an issue of witness credibility).

13

There simply is no evidence to support the instruction Hurt now argues should have been provided to the jury.

And even if we were to look at the witness testimony, there is no reason to believe that it is unreliable. Evidence calling reliability into question is required. See *State v. Harris*, 266 Kan. 270, 278, 970 P.2d 519 (1998). Ashlock was the only witness who testified she saw Hurt shoot one of the guns. Based on the circumstances under which she identified Hurt as a shooter, we find there is no serious question of Ashlock's reliability. Ashlock saw Hurt earlier in the night at QuikTrip. Our Supreme Court has held that the eyewitness identification instruction "contemplate[s] an eyewitness who does not know the defendant personally." *Saenz*, 271 Kan. at 354 (holding that where witness had seen defendant early in the evening at the bar, witnesses' reliability was not questionable and district court was not required to give eyewitness instruction). Ashlock identified Hurt and Jones as the shooters based on a photo array at the police station on the same day as the incident. Finally, defense counsel fully cross-examined Ashlock regarding her observation of Hurt shooting the weapon, so the jury heard the circumstances Hurt now claims cause her testimony to be unreliable. The jurors were instructed that it was their role to determine the weight and credit of witness testimony. Accordingly, there is no real possibility that the requested instruction would have resulted in a different verdict. Hurt has not demonstrated that omission of the jury instruction was clear error.

Affirmed.