NOT DESIGNATED FOR PUBLICATION

No. 117,283

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JULIUS A. FUGATE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; PEGGY C. KITTEL, judge. Opinion filed March 16, 2018. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., GREEN, J., and HEBERT, S.J.

PER CURIAM:  A jury convicted Julius A. Fugate of aggravated robbery, aggravated burglary, and criminal threat. On appeal, Fugate seeks a new trial, claiming the district court erroneously admitted irrelevant and prejudicial evidence at trial by allowing the victim to testify as to how she felt while she was reviewing videos of her previous statements to police. Because we agree with the district court that such evidence was admissible as it was not only relevant, but the probative value of the evidence outweighed any prejudicial effect, we affirm.

1

In October 2014, Kallie Solwa lived in a two-bedroom apartment in Lawrence, Kansas, with Will Spates, the father of her two young children. On the night of October 15, 2014, Solwa return home around 7 p.m. after visiting her sister. As she was preparing her one-year-old son and two-year-old daughter for bed, their neighbor, Marcel Williams, came over to borrow a movie and then left. Williams and his girlfriend, Jalisa Simms, had moved into the next door apartment only a few months before.

After Solwa put her children to bed, Spates left the apartment around 8 p.m. Solwa was expecting her sister to come over around 9 p.m. to watch a television show with her. In the meantime, Solwa started her evening routine. As a regular user of marijuana, Solwa was preparing to smoke a blunt, a cigar containing marijuana and tobacco, and to work on her online college classes. Solwa stated that Spates did not sell marijuana but that he would get it for her and his friends if they asked. Solwa also testified that the blunt contained the only marijuana in the apartment.

Before Solwa could start her routine, however, her daughter woke up and came into the living room. Solwa then heard a knock on her front door that sounded like the one used by her neighbor, Williams. Thinking it was Williams, Solwa opened the door and was confronted with two guns held about a foot from her face. The first person she saw was a black male with dreadlocks carrying a black handgun. Solwa testified he wore a dark-colored hoodie, a hat, and either jeans or dark canvas pants. The man also had a box of bullets in his hoodie pocket. Solwa described the second person as a mixed-race or Mexican male with messy hair and dirty hands and fingernails. She stated that he wore a dark-colored hoodie and either jeans or dark-colored canvas pants. Solwa testified at trial that he wore a white fingerless, golf-style glove on his left hand in which he carried a silver colored handgun. She identified the second male as Fugate at trial.

As the two men forced Solwa to retreat backwards into the apartment, the male with the dreadlocks, later identified as Duane Russell, told Solwa to stay quiet and demanded of Solwa, "Where is it at?" and, "We know that you have drugs here." He also told her that Spates had made their bosses mad and that they were sent to look for him. Solwa testified that she repeatedly told him that she did not have any drugs in the house and that she had her kids there.

At the same time, Fugate demanded an answer to the same question, "Where is it at?" and he went into her bedroom. She stated that she saw him going through her dresser and generally tearing apart her room and closet. He then went through the laundry room and emptied multiple shoe boxes she had used to organize her possessions.

After Fugate went through Solwa's apartment, he came back into the living room where she was sitting with her daughter on the sofa. He made her turn around and pushed her to her knees. Fugate then stood behind Solwa and put his gun to her head. He kept saying, "I know you know where it's at," and she kept denying that she knew or had anything. After giving Solwa one more chance to tell him, Fugate pulled the trigger and she heard a click. He repeated the question, and Solwa fell forward. Once she got back up and turned around, Solwa saw Fugate had her daughter with the gun to her head. She pleaded with him to put the gun back to her head, but after Solwa again told Fugate that she did not know where anything was, he pulled the trigger and she heard a click. Fugate then dropped Solwa's daughter, who ran crying and screaming to Solwa. At that point, a commercial came onto the television which stated the show she was planning to watch with her sister was about to come on. Solwa told the men that her sister would be there any minute. The men decided to leave but told her that they would be back, and Russell took the blunt cigar.

After the men left, Solwa watched them jump over a small fence by her apartment; she tried to lock her door and called 911. Her sister and brother-in-law arrived at the

apartment shortly after she called the police. Solwa testified that she was pretty hysterical and crying at that time. Her neighbors, Simms and Williams, came outside to ask her what happened, and Solwa told them that someone came into her house with a gun and put it to her and her daughter's head. Solwa testified that when the police arrived she did her best to tell them what happened, but at trial she admitted that it was a bit of a blur and that she had trouble remembering the exact details of her conversations.

One of the first responding officers, Lawrence Police Officer Peter Kerby, stated that he heard a woman scream when he first approached the apartment complex. He then identified the victim as Solwa and described her demeanor as distraught, crying, and screaming. The crime scene investigators conducted an investigation that night of the apartment but were unable to find any usable fingerprints.

Later that night, Solwa was interviewed by Lawrence Police Detective Michael McAtee. Solwa identified three different guns that the two males may have carried during the incident but admitted she did not have a lot of experience with guns. Solwa picked out a black semiautomatic gun that looked like the handgun carried by Russell and two guns—a silver revolver and silver handgun—that looked like the gun carried by Fugate.

Following the interview, Solwa went home and began to look for the men on Facebook. She began by looking at her neighbors' friend list first because Simms and Williams had recently moved in, and Solwa stated she and Spates had not had trouble before then. After she was unable to find anyone who resembled the men, Solwa looked at Simms' brother's page. Simms testified at trial that her brother's full name was Jeffrey Belaire, Jr.

The first comment on Belaire's page was from a black male with dreadlocks who Solwa recognized as one of the men from the incident. She clicked on the photo and his name was listed as "Young Huss." Solwa contacted McAtee that night and went back to

4

the Lawrence Police Department to show them the picture that she found. Solwa testified at trial that she followed the page until it was taken down two days later.

In a separate incident in Lawrence at 1 a.m. the next morning, Lawrence Police Officer Eric Barkley approached a 2003 Ford gray pickup truck with a Texas license plate that was parked at the Eighth Street boat ramp. At first, Barkley believed the truck contained two people. He checked for warrants and identified the driver as Fugate and the passenger—whom he recognized from his time as a school resource officer—as Belaire. Barkley stated that Fugate had long straight hair pulled back into a ponytail. Upon running the tag number, Barkley learned the pickup truck was registered to Carol Sue Gregory-Fugate. Barkley then approached the vehicle a second time and realized the truck cab had one more person in it, whom he identified as Russell. He described Russell as a black male with dreadlocks.

The next day, Solwa showed Simms the picture of the man with dreadlocks, and Simms told her the man was her brother's friend named Dreads. Simms testified that she had seen Dreads with her brother about a year before and, most recently, about one week before the incident when he came to her apartment to borrow a basketball. She also testified that Dreads was a passenger in a light-colored pickup truck with another man whom she described him as light-skinned, possibly mixed-race, and with long hair. According to Solwa's testimony at trial, Simms told Solwa that Dreads would come to Lawrence so that Belaire and Dreads could rob people. McAtee later determined that Dreads was Russell.

McAtee prepared an arrest warrant for Russell. He learned that Barkley had had contact with three individuals in a Ford gray pickup truck and had the tag number. McAtee learned that the vehicle was owned by Fugate's mother and was bought from a small finance company that had installed a GPS tracker in the truck. Upon contacting the

finance company, McAtee learned that the GPS tracker confirmed the truck was in Lawrence near the Eighth Street boat ramp on October 15, 2014.

On October 20, 2014, McAtee drove to Dallas, Texas, after being notified that the Dallas police had apprehended Russell on the Lawrence arrest warrant. While in Dallas, McAtee assisted in apprehending Fugate during a traffic stop of the Ford truck. McAtee testified that upon searching the truck he found a brief case that contained documents belonging to Fugate and a small dark-colored pellet gun that was similar to a semi-automatic handgun. During an interview with McAtee, Fugate admitted that he was in Lawrence on October 15, 2014, but stated he was there to meet some girls. He also admitted that he had contact with Barkley at the Eighth Street boat ramp. McAtee testified that Fugate had fresh tattoos on his hands and stated that his hands and fingernails were a little dirty. About a week later, McAtee prepared two photo lineups, and Solwa identified Russell as photo number five in the first lineup and Fugate in the second lineup as photo number three.

In August 2015, a jury found Fugate guilty of aggravated robbery, aggravated burglary, and criminal threat. The district court sentenced Fugate to a total of 102 months' imprisonment.

Fugate timely appeals.

DID THE DISTRICT COURT ERR IN ADMITTING PREJUDICIAL EVIDENCE AT TRIAL?

On appeal, Fugate asserts the district court erred in permitting Solwa to tell the jurors how she felt while refreshing her memory by viewing the videos of her interactions with police shortly after the incident. Fugate claims this evidence was both irrelevant and unduly prejudicial.

6

Our review of questions involving the admission of evidence is a multistep one. First, we must determine whether such evidence is admissible. Generally, "all relevant evidence is admissible." K.S.A. 60-407(f). K.S.A. 60-401(b) defines relevant evidence as evidence having "any tendency in reason to prove any material fact."

> "'Relevance has two elements:  probative value and materiality. *State v. Marks*, 297 Kan. 131, 142, 298 P.3d 1102 (2013). Evidence is probative if it furnishes, establishes, or contributes toward proof. Probativity is reviewed for abuse of discretion. Evidence is material if it tends to establish a fact that is at issue and is significant under the substantive law of the case. Materiality is reviewed de novo. 297 Kan. at 142.'" *McCormick*, 305 Kan. at 47 (quoting *State v. Coones*, 301 Kan. 64, 77-78, 339 P.3d 375 [2014]).

During the trial, the defense confronted Solwa on cross-examination with some prior inconsistent statements. At one point, Solwa denied being able to recall her prior statements even after reviewing them. On redirect examination, the State asked Solwa to describe the emotions she was feeling on the day the video of the first responders was recorded. Then, the State asked her:

> "Q. [by the State] What was going through your mind when you watched those videos this morning?
>
> > "[Defense Counsel]: Objection, Your Honor. Relevance.
> >
> > . . . .
> >
> > "[The State]: I think it goes to her demeanor and her testimony today, Your Honor.
> >
> > "The Court: Overruled. You may answer.

7

"A. [Solwa]: (The witness is crying.) Um, well, I have spent the last several months trying to forget everything that had happened. It just brought everything back. And so for the little things that I haven't been able to forget and move on, it's all back now."

Fugate raised a contemporaneous objection in the district court to Solwa's testimony on relevancy grounds, thus preserving the relevance issue for appeal. The State argues that Solwa's testimony was relevant because it related to her credibility as a witness. We agree. Under K.S.A. 60-420:

"Subject to K.S.A. 60-421 and 60-422, for the purpose of impairing or supporting the credibility of a witness, any party including the party calling the witness may examine the witness and introduce extrinsic evidence concerning any conduct by him or her and any other matter relevant upon the issues of credibility."

Another panel of this court has stated that evidence relating to a witness' credibility is relevant. *State v. Salas*, No. 103,605, 2011 WL 2637432, at *2 (Kan. App. 2011) (unpublished opinion) (citing *State v. Ross*, 280 Kan. 878, 886, 127 P.3d 249, *cert. denied* 548 U.S. 912 [2006]). The *Salas* panel specifically discussed the evidence as relevant when attacking a witness' credibility:

"Credibility can be attacked in any number of ways. A witness might not have gotten a good look at the incident about which he or she is testifying or might have trouble recalling the circumstances. A witness may have given differing accounts of the pertinent events on various occasions. A witness might have a bias or prejudice disposing him or her toward one side or against the other. Similarly, a witness could have something to gain or lose by testifying favorably for one side or the other. All of those are generally appropriate and admissible considerations in challenging a witness. Whether they should be engaged in a given case or with a given witness goes more to counsel's trial strategy than limitations imposed by the rules of evidence." 2011 WL 2637432, at *2.

8

At the time of the alleged error, the State was conducting a redirect examination of Solwa following a cross-examination that pointed out inconsistencies between Solwa's trial testimony and prior statements. "[P]rior statements by a witness are generally material and probative, *i.e.*, relevant, because the consistency or lack thereof between the statement and the testimony either corroborates or undercuts the witness' credibility." *State v. Reed*, 300 Kan. 494, 506, 332 P.3d 172 (2014). "A witness may be asked questions on redirect examination to clarify or modify statements made on cross-examination. A witness on redirect may also explain the effect of new matters brought out on cross-examination." *State v. Wade*, 244 Kan. 136, 145, 766 P.2d 811 (1989).

Here, the challenged testimony explains why Solwa may have given less credible testimony based on her lack of memory. Generally, a witness or victim's credibility becomes material to a criminal case if it has a "legitimate and effective bearing on the jury's determination of whether [the defendant] had committed the criminal acts against [the victim]." *State v. Stafford*, 296 Kan. 25, 44, 290 P.3d 562 (2012). "The reliability of a witness is an essential jury consideration, one upon which guilt or innocence may ultimately rest." *State v. Sean*, 306 Kan. 963, 991, 399 P.3d 168 (2017).

Solwa was the only person who could identify Fugate and testify about his involvement in the events that unfolded inside her apartment on October 15, 2014. The lack of physical evidence and corroborating witnesses rendered Solwa's credibility in describing and identifying Fugate material and probative to the case. See *Stafford*, 296 Kan. at 44. While Solwa's credibility was in dispute following cross-examination, Solwa's testimony about her feelings while she reviewed videos of her prior statements was material and probative to explaining the gaps in her memory. Specifically as to the probity of the evidence, Solwa's ability to identify Fugate renders those pertinent facts more or less true based on the quality of her memory. Accordingly, we find that the district court did not err in admitting her testimony on redirect examination as relevant.

Fugate also argues that the evidence, even if relevant, was unduly prejudicial and should not have been admitted. The district court has the discretion to exclude evidence where it finds that the probative value of the evidence is outweighed by its potential for producing undue influence. K.S.A. 60-445. We review any such determination for an abuse of discretion. *State v. Lowrance*, 298 Kan. 274, 291, 312 P.3d 328 (2013).

However, Fugate never objected at trial to the admission of Solwa's testimony on prejudice grounds.

> "This court has long held, and the rule has been embodied in K.S.A. 60-404, that a 'verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection.' [Citation omitted.]" *State v. Bryant*, 272 Kan. 1204, 1208, 38 P.3d 661 (2002).

Moreover, "a defendant may not object to the introduction of evidence on one ground at trial and then assert a different objection on appeal." *State v. Gilliland*, 294 Kan. 519, 527, 276 P.3d 165 (2012). While Fugate did assert a contemporaneous objection at trial, his objection was specific only to the relevance of Solwa's testimony, not that her testimony was prejudicial. Therefore, we find that Fugate has failed to preserve the prejudice argument for appeal. See *State v. McCormick*, 305 Kan. 43, 47, 378 P.3d 543 (2016).

However, even assuming Fugate had properly preserved this issue for appeal, we still find the district court did not err in admitting Solwa's testimony regarding her feelings that night. We agree with the State's assertion that nothing in Solwa's response or in the record indicates that her testimony encouraged the jury to consider the emotional harm done by defense counsel's questioning or to view Fugate and his counsel with disdain. For these reasons and for the reasons outlined above in our relevancy analysis,

10

Solwa's testimony was not unduly prejudicial, and the district court did not err in admitting it.

Affirmed.